# ELIZA M. ARNOLD v. HANSEN E. SMITH and Others.[1]

March 20, 1913.

Nos. 17,878—(201).

**Personal interest of administrator in estate — constructive trust.**

1. One who holds the position of an administrator is incapable of acquiring for his own use an interest in the estate, and if he attempts so to do equity impresses a constructive trust upon the title so acquired, regardless of whether such acquisition was accomplished innocently, or even without knowledge of the fact that the property belonged to the estate, or was tainted with actual fraud.

**Refund of forfeited tax certificate — judgment inoperative.**

2. Where the purchaser at a forfeited tax sale assigned to the state the certificate of purchase issued thereon, and received a refundment of all the money paid for such certificate, a judgment theretofore entered, quieting such purchaser's title under the certificate, was thereby rendered inoperative as between the owner of the land and the purchaser; the latter being thereafter estopped to assert any rights thereunder.

**Trust — finding sustained by evidence.**

3. Findings of the trial court, in an action by a devisee to impress a trust upon the subject of the devise in the hands of the defendant, who had acquired the same subsequently to his discharge as administrator of the estate, that the defendant acted throughout the transactions leading up to his acquisition of title with knowledge that the land belonged to the estate, that he participated therein, and that his acts were done with a view of acquiring the plaintiff's interest in the land, *held* sustained by the evidence.

[1] Reported in 140 N. W. 748.

**Plaintiff not estopped by judgment.**

4. The plaintiff was not estopped, as against the defendant, from asserting her title to the land, by a judgment quieting title thereto in third persons, from whom the defendant subsequently acquired the title sought to be impressed with the trust.

**Plaintiff not estopped by a Torrens decree.**

5. The plaintiff was not estopped to seek the relief prayed by a Torrens decree adjudging title in the defendant; she having been knowingly misnamed in the summons as bearing her former husband's name, and having neither appeared in the proceeding nor been personally served.

**Amount of recovery from defendant.**

6. The plaintiff was entitled to recover from the defendant the value, not only of a portion of the land impressed with the trust which the defendant had conveyed to another, but also of the remaining interest in the land devised to her, which the defendant never acquired, but which had passed to third persons, and thus been lost to her, through the defendant's wrongful acts.

**Assessment of damages.**

7. The value of the land which the plaintiff lost by reason of the defendant's wrong was properly determined by the trial court, and the plaintiff's damages were properly assessed, except as to interest.

**Laches.**

8. The plaintiff *held* not barred by laches.


Action by Eliza M. Arnold, the widow of Cassius C. Merritt, deceased, in the district court for St. Louis county against Hansen E. Smith, The Northern Security Company, H. E. Smith & Company, corporations, H. H. Phelps, as trustee of the creditors of Hansen Smith, and another, copartners as the Merchants Bank, L. A. Barnes, trustee in bankruptcy of Hansen Smith individually and Hansen Smith and another, copartners as the Merchants Bank of Duluth, and others, to obtain a decree that defendants and each of them held any part of the southeast quarter of the northwest quarter of section 12, township 58 north, range 19 west, then or thereafter acquired, in trust for plaintiff; to enjoin each of them from conveying or mortgaging any part of the same; for an accounting between plaintiff and defendant Smith; and for $50,000 damages. The facts are stated in the first opinion.

The separate answer of H. H. Phelps alleged that his appointment as trustee of the estate of Hansen Smith and another, copartners as The Merchants Bank, was by private agreement, and upon the appointment of a trustee in bankruptcy of that copartnersLip he ceased to be such private trustee, and disclaimed any interest in the property.

The answer of defendant Barnes, as trustee in bankruptcy, claimed an interest in the land but denied that such interest was subservient to any title of plaintiff or of the estate of C. C. Merritt, deceased.

The answer of defendant Smith and others denied that his interest in the land was held in trust for the estate of Cassius C. Merritt or for plaintiff, denied that plaintiff had any interest in the land, and alleged that the action was brought in collusion with Thomas A. Merritt and David L. Fairchild for the sole purpose of assisting the latter to defeat defendant's petition to the United States District Court, District of Minnesota, to set aside a pretended sale of the land to Merritt and Fairchild.

The case was tried before Ensign, J., who made findings of fact, as mentioned on page 126, infra, and as conclusions of law ordered judgment that defendant H. E. Smith & Company held in trust the undivided 2/32 of the premises described in trust for plaintiff, that defendant by its proper officers deed the premises to plaintiff and deliver to her the certificates of title for such undivided interest; that defendant Smith pay the sum of $4,000, with interest from September 27, 1905, $6,000, with interest from September 19, 1906, and $2,000, with interest from July 8, 1907; that all right, title, interest, estate or lien in, to, upon or against said undivided 2/32, held and owned by any of the defendants, be transferred and vested in plaintiff; that plaintiff was the owner in fee simple, and all the defendants and persons claiming under them be forever barred from asserting any interest in the premises. The defendants, excepting H. H. Phelps as trustee and E. H. Jennings, appealed from an order denying their motion for amended findings of fact and conclusions of law and from an order denying their motion for a new trial. Affirmed.

*John A. Keyes* and *H. V. Gard,* for appellants
*John B. Arnold,* for respondent.

PHILIP E. BROWN, J.

Action to declare and enforce a constructive trust and for other relief.

Cassius C. Merritt, one of the discoverers of the Iron Range, and himself familiar with the discoveries of iron and iron properties thereon from actual observations made on the grounds, and an experienced iron man, died testate in April, 1894, leaving a widow, this plaintiff, as his sole devisee and executrix. Several children also survived him. The defendant Hansen E. Smith since 1892 has resided in Duluth, and since 1894 has been familiar in a general way with what was considered iron property. In February, 1894, he became the private secretary of Cassius, and so continued until his death, thus becoming reasonably familiar with the affairs of his employer, and after the latter's death he continued to look after the business and property of the estate. This plaintiff knew little of the details of her husband's business affairs, and, as admitted by the defendant Smith, was not a business woman, but was aware of Smith's familiarity therewith as stated, and for these reasons, and also others, reposing confidence in him, she petitioned for his appointment as administrator. Her petition was granted in June, 1894, she becoming security on his bond, and he continued to act until his discharge on November 10, 1899. The estate proved to be insolvent, the appraised value being $27,000, whereas the claims exceeded $300,000, of which over $70,000 consisted of judgments entered against Cassius and his brother Andrus in 1893 and 1894 prior to the former's death. Smith had knowledge that Cassius dealt in and purchased iron lands and property, and was familiar in a general way with his opinions of the value thereof. While the deceased and the said Andrus were copartners, doing business in mining properties in the year 1891, they acquired the title to an undivided one-half of the southeast ¼ of the northwest ¼ of section 12, township 58, range 19, St. Louis county, by deed as individual grantees, from one Knudt Olson. This deed was duly recorded on December 23, 1891. Smith's final account as administrator and the inventories and proceedings in the estate of Cassius C. Merritt contain no account or mention of this land, and Smith, as administrator, never disposed of it or paid the taxes thereon,

though he had sufficient money of the estate available to make such payment.

In June, 1895, Smith, with two others, organized a corporation named the Northern Security Company; he being the president and treasurer thereof and the owner of the majority of the stock. The corporation engaged, among other things, in the business of buying lands and tax titles. It appears that this corporation, at Smith's instance, purchased some $1,300 of judgments which were first liens on the property of the deceased; this, according to Smith's claim, being done for the protection of the estate, in that "the succeeding judgment" creditors would have first to pay such amount before they could levy on and sell any of the property, "and it was a protection in the sense that nobody wanted to do that, and didn't do it." Smith gave his note to the company, bearing interest at 10 per cent per annum, for the amount of these judgments. His further explanation of this transaction is as follows:

"Q. What was finally done with those judgments that the Northern Security Company purchased?

"A. I think the Northern Security Company carried them for some years, while the estate was not in funds. When the estate received the money, the Northern Security Company was repaid; but the claims were still allowed to stand in the same position, and some sort of a contract was drawn up showing that these claims really belonged to the estate. Finally, at the closing up of affairs, the estate got its money back as per his statement here, where they received some 1,300 and some dollars.

"The Court: I don't understand that exactly. The estate paid these judgments?

"A. The Northern Security Company bought them; they were liens.

"The Court: And the Northern Security Company were the ones that were to receive the money?

"A. Yes; but later on, after the estate came in funds, the estate paid the money back to the Northern Security Company; but the items were left there, and then finally, when it was closed up, the estate got its money back."

Smith also caused the corporation to buy the land here involved, with other tracts, at the forfeited tax sale held in June, 1899, under Laws 1897, p. 526, c. 290, in the name of the company, for $61, and a certificate to that effect was issued to the company therefor. This land was within that portion of the known iron formation upon which good and valuable merchantable deposits of iron ore were then being mined, and its location was near the center of the iron-bearing formation. On December 3, 1899, the company commenced an action to determine adverse claims as against the entire 40, wherein this plaintiff and Azro T. Crosley and others were made defendants, and on December 3, 1900, a judgment was duly entered therein, quieting the company's alleged title to the entire 40, its sole claim of title, however, being the tax certificate mentioned. Two days later this court rendered a decision, in the case of Duluth Banking Co. v. Koon, reported in 81 Minn. 486, 84 N. W. 335, holding said Laws 1897, p. 526, c. 290, unconstitutional, and a tax title based thereon void. Evidently apprehensive that the judgment founded on a void tax title was vulnerable, the Northern Security Company made application to the proper authorities for a refund of the amount paid on the said forfeited tax sale. The refundment was made June 24, 1901, and on the same day it duly conveyed the interest acquired under the forfeited tax sale certificate to the state of Minnesota, which conveyance was duly recorded July 29, 1901. On September 18, 1901, a certified copy of the judgment determining adverse claims in the case of the Northern Security Company against the plaintiff herein et al. was recorded, at Smith's instance, in the office of the register of deeds. Smith claims that he obtained title to an undivided one-fourth of the 40 referred to under a sheriff's certificate of sale, on execution of date January 4, 1902. This alleged interest, called the Azro T. Crosley interest, and with which the plaintiff's husband was never connected, Smith scheduled as belonging to him in the bankruptcy proceedings about to be mentioned. It appears that by deed of date March 17, 1900, the Northern Security Company attempted to convey an undivided one-fourth of an undivided one-fourth of the 40 to Daisy I. Wahl. On the same day the said Wahl deeded an undivided one-fourth of the 40 to the Northern Se-

curity Company. On January 31, 1901, the defendant Hansen E. Smith deeded an undivided one thirty-second of the land to Wahl. On the same day Wahl quitclaimed to the Northern Security Company the entire 40. On February 1, 1901, the Northern Security Company deeded to Wahl an undivided one-fourth interest in the 40.

In November, 1903, the Merchants Bank, a partnership composed of Hansen E. Smith and James P. Smith, assigned its effects to H. H. Phelps, as trustee for creditors. Phelps, as trustee, obtained a judgment against the Northern Security Company on an indebtedness due the bank. In November, 1904, Smith individually and the Merchants Bank were adjudged bankrupts, and L. A. Barnes was appointed trustee. Barnes thereafter, as such trustee, caused an execution to be issued upon the judgment last mentioned, and a sale thereunder to be made in March, 1905, of all the right, title and interest of the Northern Security Company in the 40 acres mentioned; the purchaser being L. A. Barnes, trustee, and a certificate of sale being issued accordingly. Thereafter the trustee, on September 23, 1905, conveyed to Thomas A. Merritt and David L. Fairchild, the alleged undivided one-fourth interest called the Crosley interest, and also on September 20, 1905, assigned to them the certificate mentioned, which included the interest involved in this action. In May, 1906, Thomas A. Merritt and David L. Fairchild brought an action to quiet title to an undivided three-fourths interest in the land, naming as defendants the Northern Security Company, Hansen E. Smith, the assignee of Andrus R. Merritt, Crosley, and those claiming under him, the plaintiff in this action, and also all other persons unknown claiming any estate, right, or interest in and to the land, and judgment was duly rendered August 17, 1906, in favor of plaintiffs therein, that they were the owners of the interest claimed, and that none of the defendants had any claim, right, title, or interest therein. On September 19, 1906, Thomas A. Merritt and David L. Fairchild conveyed to Smith, for the stated consideration of one dollar, an undivided one-eighth of all right, title, and interest in the 40 in question under the assignment of the certificate of sale mentioned; the deed being as follows:

"This indenture, made this 19th day of September, A. D. 1906,

by and between Thomas A. Merritt and Jennie S. Merritt, his wife, and David L. Fairchild, single, all of Duluth, St. Louis county, Minnesota, parties of the first part, and Hansen E. Smith, of the same place, party of the second part,

"Witnesseth: That whereas, heretofore and on the 20th day of September, 1905, the parties of the first part herein purchased from L. A. Barnes, as trustee in bankruptcy of Hansen Smith and James P. Smith, copartners as the Merchants Bank, a certain portion of a sheriff's certificate on execution sale covering an undivided one-half of [the 40 in question is here described], which assignment of said sheriff's certificate is recorded in the office of the register of deeds of St. Louis county, Minnesota, in Book 222 of Deeds, on page 213; and

"Whereas, on the 23d day of September, 1905, said parties of the first part herein acquired from said L. A. Barnes, as trustee in bankruptcy of Hansen Smith, by deed dated on that day, an undivided one-fourth of the land above described, which said deed from the said trustee in bankruptcy to the parties of the first part herein is recorded in the office of the register of deeds of said St. Louis county, Minnesota, in Book 222 of Deeds, on page 211; and

"Whereas, the said parties of the first part have contracted, bargained, and agreed with the party of the second part herein to deed and transfer to him an undivided one-eighth of all the interest in said land which they, the parties of the first part, acquired by virtue of each of said transfers to them by the said trustee in bankruptcy:

"Now, therefore, the said parties of the first part, pursuant to the agreement to convey aforesaid, and in consideration of one dollar to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, do hereby grant, bargain, quitclaim, and convey unto the said party of the second part, his executors, administrators, and assigns, forever, an undivided one-eighth of all the right, title, and interest which the said parties of the first part acquired in and to [the 40 is here described] by virtue of the assignment [described as above]; it being intended to quitclaim and convey to the party of the second part herein an undivided three thirty-seconds of the land above described, provided said parties of

the first part acquired by the said assignment and the said deed from the said trustee in bankruptcy three-fourths of said land, but in any event the transfer by virtue hereof to be limited to an undivided one-eighth of whatever interest in said land was acquired by the parties of the first party by virtue of said assignment from said trustee in bankruptcy, and an undivided one-eighth of whatever interest was acquired in said land by virtue of the deed aforesaid from said trustee in bankruptcy. To have and to hold," etc.

Smith, when interrogated on the trial, in response to the question, asked by his counsel, "What was the consideration for that deed?" replied, "The amount to be transferred to me was one-fourth of what they received, and the consideration was one-fourth of the consideration paid by them." The interrogation and answers of the witness then proceeded as follows:

"Q. Subsequently did you dispose of a part of your fourth before they made the conveyance to you?

"A. Yes, sir; for sufficient to pay for the whole. I parted with half of it, or rather they made the deal. The result was that the returns from the half that was sold was sufficient to pay for the whole interest that I received, or nearly so."

In response to the following questions asked by the plaintiff's counsel, Smith answered as follows:

"Q. There was no advance consideration over the price that was paid to L. A. Barnes that was paid by you, was there?

"A. Well, I was to pay one-fourth of what they had paid for one-fourth of what they had received.

"Q. From L. A. Barnes?

"A. Yes; part of it from the bank estate, and part from my estate. I owned personally a quarter interest in this land, and half interest of the bank matter.

"Mr. Arnold: I move to strike that out, as not responsive to the question, or all of it, excepting the word 'Yes.'

"The Court: It may be stricken out.

"Witness: That answer is not correct as it stands now.

"The Court: Read the testimony." The question and answer were read by the reporter.

"Mr. Arnold: Now I move to strike out all except the word 'Yes.'

"The Court: The motion is denied.

"Q. One-fourth of what amount do you refer to?

"A. One-fourth of three-fourths.

"Q. Three-quarters of what?

"A. Of the Southeast $\frac{1}{4}$ of the Northwest $\frac{1}{4}$ of 12—58—19.

"Q. That is one-fourth of three-quarters of the amount that was paid to L. A. Barnes, wasn't it?

"A. Was what I was to pay; yes, sir. I presume that is true. I took their statement for it.

"Q. Well, you know as a matter of fact that you checked it up and found it was the identical amount that was paid?

"A. I don't know as a matter of fact. I think I paid more, because there was some expenses in connection with it, and I was to pay one-fourth of what it stood them, including interest."

Likewise in relation to this transaction the following is an excerpt from Smith's answer to the plaintiff's complaint:

"Further answering, these defendants admit that the trustee in bankruptcy of the estate of the Merchants Bank sold an undivided one-half interest in said lands under a judgment against Northern Security Company, and that the said trustee became purchaser thereat, and that thereafter the defendant Hansen E. Smith bargained for and caused to be conveyed to him an undivided 3/32 of said 40-acre tract from Thomas A. Merritt and David L. Fairchild, who, as these answering defendants verily believe, had fraudulently attempted to deprive the bankrupt's estate thereof, and that because thereof the defendant Hansen E. Smith had doubts when he took such conveyance, and now had doubts, whether he acquired any title by such conveyance from said Thomas A. Merritt and David L. Fairchild."

On September 19, 1906, said Merritt and Fairchild executed to Walter A. Barrows, at Smith's request, a deed in substantially the same form as the one set out above and covering interests to the same amounts, which conveyance was the one referred to by Smith in his testimony set out above as netting him enough to pay for the entire interest conveyed to him by the same grantors.

On November 7, 1906, an application to register the title to the 40 under the Torrens act was instituted by the alleged several owners thereof, of whom Smith was one, and the plaintiff herein was made a party defendant under the name of Eliza M. Merritt only, and she in no wise appeared in the proceedings. On February 6, 1907, a decree was entered adjudging Smith to be the owner of an undivided 3/32, and certificate of title thereto was issued. Thereafter Smith conveyed an undivided 1/32 interest in the 40 to one Jennings, receiving therefor the sum of $2,000 cash, and subsequently to this he conveyed an undivided 2/32 interest in the 40 to H. E. Smith & Co., a corporation of which he was president and general manager, and in which his wife was a large stockholder, and the consideration of the conveyance was stock in the corporation issued to her.

In 1897, or thereabout, the plaintiff resided in California, where she has since resided, and some 12 years ago she married a Mr. Arnold. Smith never called her attention to the fact that her former husband had any interest in the 40, and she was unaware that he had until about two years before the trial in the registration proceedings.

The facts above recited are practically undisputed and cover substantially all the matters of importance which developed on the trial.

The court's findings covered all of them, and in some respects go beyond what has been stated, especially concerning the so-called Crosley interest, and were to the following effect: That Hansen E. Smith procured the forfeited tax title for the Northern Security Company, knowing that it embraced the Merritt interests; that he knew of the purchase of the land by the Merritts for mining purposes; that the Northern Security Company was a mere creation of Hansen E. Smith, and through it, for his own benefit, and to acquire this one-fourth interest of the plaintiff, the action to determine adverse claims was instituted and carried into judgment on December 3, 1900, as above stated; that Smith participated in the steps which resulted in the divesting of the plaintiff's title, having such end in view; that the judgment in the action brought by Merritt and Fair-

child did not determine the plaintiff's rights against Smith; and that the registration proceedings did not estop her from obtaining relief herein. Upon such findings the court concluded that the interest which Hansen E. Smith acquired from Merritt and Fairchild, and which was confirmed in him by the registration proceedings, belonged to the plaintiff herein, and that she should have the damages for the value of the balance of the one-fourth interest in the said 40 of which Cassius C. Merritt died seised.

The defendants moved for amended findings, and also for a new trial. This is an appeal by several of the defendants, including Smith, from the order of the court denying such motions.

The main assignment of error is that the decision of the trial court is not sustained by the evidence and is contrary to law, and while there are further claims of error concerning matters of evidence, or the refusal of the court to strike out or amend findings, we do not deem it necessary to discuss them.

1. The claim of the defendant Smith, even if it were true, that he had no knowledge that the plaintiff's former husband was the owner of an interest in the 40 covered by the tax receipt, is not of controlling importance. The facts, however, are evidentially material as affecting Smith's credibility. The court's finding of fact that, at the time of his company's purchase of the tax receipt, he did know of the deceased's interest in the land, and that his purchase and subsequent acts, both individually and through the Northern Security Company, were done with the view of obtaining the title to the plaintiff's interest in the property, we deem to be fully supported by the evidence. Indeed, we are unable to see how the court could have reached any other conclusion.

What other reason can be urged for his recording the first judgment in the action to determine adverse claims? At the time this was done he knew that the whole foundation of that judgment had been destroyed, and that he was clouding the title to the land. Again, why was he keeping apparently alive the judgments against the deceased, which his corporation had purchased, after they had been paid? It is also to be noted that, at the time of the levy by the trustee in bankruptcy upon the alleged interest of the Northern

Security Company in the land, Smith knew that no such interest ex-ixted, and yet shortly thereafter we find him dealing with the pur-chasers of such alleged interest, who acquired the certificate of sale. Furthermore, we think it was a fair inference for the court to draw, from the fact of Smith's attempts to obtain title to the portions of the 40 in which the deceased and his brother were not interested, and from his general knowledge of mining properties, that he realized that the land was probably of great value for mining purposes. We think the court was right in connecting Smith generally with those who were attempting to get the property.

Before proceeding further, however, it will be well to get clearly in mind the situation with which we are to deal, and which, while set out at length in the statement of facts, may be reduced, for the purpose stated, within narrow limits, as follows: The adminis-trator of an estate fails to inventory a tract of land belonging to the deceased. While administrator he purchases a tax title thereto, which, however, is void by reason of the invalidity of the statute under which the sale is made. He does not dispose of the land as administrator, and some few years after his discharge we find him asserting the record title to an interest therein, without in any way claiming to have derived such title from the deceased, and this, in effect, without any outlay on his part, so far as concerns his acquisition of the interest of the deceased in the land. It can-not, perhaps, safely be asserted that such a claim might not rest upon a sufficient legal foundation; but we think it may be said that such is unlikely, and before it could so be determined the various steps leading to such a result should be scrutinized with care.

The plaintiff having established her husband's title to the interest in the 40 here involved, his will designating her as sole devisee, the failure of the administrator to inventory or dispose of the property as administrator, the administrator's discharge, and the consequent closing of the estate, a prima facie case of title in her was made out. Let us, then, examine the defendant Smith's claims as to the manner in which her title passed to him. These claims rest wholly upon estoppel by judgment, and this is founded upon (1) the judgment to determine adverse claims of date December 3,

1900, in the action wherein the Northern Security Company was plaintiff, and this plaintiff and others were defendants; (2) the judgment of date August 17, 1906, entered in the action to quiet title, wherein Merritt and Fairchild were plaintiffs, and this plaintiff and also Hansen E. Smith and others were defendants; (3) the determination in the registration proceedings. We will consider these judgments in the order stated.

So long as Hansen E. Smith held the position of administrator of the estate of Cassius C. Merritt, he could in no way acquire any part of the estate for his own use. It makes no difference in the eye of the law whether the acquisition was by deliberate fraud to deprive the estate of the property, or came about innocently, or even without knowledge that the property belonged to the estate. If the latter be the case, the court will nevertheless regard the transaction as a constructive fraud, and he will be held accountable to the same extent as if he had carried out a planned design to defraud. In either case he will be held to hold as trustee ex maleficio.

In King v. Remington, 36 Minn. 15, 29 N. W. 352, it is stated: "The rule which disables one occupying a confidential or fiduciary relation, in respect to property the subject of a sale, from purchasing for his own benefit, and regarding him as a trustee if he do purchase, is absolute, and looks to no other facts than the relation and the purchaser." Fraud in fact need not be shown.

The same rule is announced and applied in Gilbert v. Hewetson, 79 Minn. 326, 82 N. W. 655, 79 Am. St. 486, where it is said, with reference to a claim obtained by a trusted clerk of a receiver, that in so doing "he may have proceeded in good faith—may have supposed that the receiver had no title or interest in the * * * claims—but his good faith does not relieve him. It is not necessary to show fraud in such cases. Equity declares all such transactions illegal, and all profits accruing to the trustee to belong to the cestui que trust, without regard to any intentional or other fraud."

It must be taken that whatever was done through or by the Northern Security Company was the act of its principal stockholder and managing officer, Hansen E. Smith. Under the rule above stated it must also be concluded that, Smith having acquired the tax title

covering the 40 for the Northern Security Company while he was acting as administrator of the estate of Cassius C. Merritt, such purchase inured to the benefit of the estate.

The plaintiff's contention that the action to determine adverse claims based on such title, though begun by the Northern Security Company after Smith was discharged as administrator, and the judgment rendered therein, did not divest the right of this plaintiff, the sole devisee, of the right to impress a trust upon the interests obtained by the Northern Security Company may be well taken (Henderson v. Murray, 108 Minn. 76, 121 N. W. 214, 133 Am. St. 412); but we are not required to determine it. The defendant's contention that the plaintiff is barred from asserting her rights here because of this judgment must be determined against him upon broader grounds and these we will now consider; the question being: What effect did the subsequent conveyance by the Northern Security Company to the state of Minnesota have upon the judgment and the title to the land? The fifteenth finding of the court contains, in substance, the following: On June 19, 1901, the Northern Security Company "duly conveyed the interest acquired under said forfeited tax sale certificate to the state of Minnesota, * * * and that thereby the taxes became and were the property of the state of Minnesota, and * * * the estate of Cassius C. Merritt then was the owner of the undivided one-fourth" of this 40 "free and clear of all incumbrances." We agree in the conclusion reached by the trial court.

The tax title and the judgment based thereon were thus completely wiped out. The records disclosed that the title stood in Azro Crosley, Leslie A. Belding, Cassius C. Merritt, and Charles S. Christopher, as assignee of Andrus R. Merritt, each owning an undivided one-fourth, when, in June, 1899, the forfeited tax sale certificate was obtained by the Northern Security Company, and also when it filed lis pendens and began action to quiet title and determine adverse claims in December following. The only record basis for claim of ownership by the Northern Security Company was this certificate, and it is clear from the evidence that none other existed. Aside from any question of trust, the judgment determined

that at the time of its rendition the Northern Security Company was the owner, and that the defendants therein had no claim to the land, and, though without legal ground to stand upon, we will assume that it nevertheless concluded all the parties thereto. But the next day the Northern Security Company might convey the title it obtained, or do some act which would estop it thereafter from claiming any benefit from the adjudication. We think it so did in this case. Had the company quitclaimed to the state, no one could have maintained that any interest or right would have remained in the company which in any way could have been transmitted to another. And we hold that by the course it took after the entry of the judgment, transferring to the state the forfeited tax sale certificate, thus covenanting that it was then the owner thereof and had a good right to convey the same, it accomplished the same result, and that thereafter it was estopped from claiming anything under the judgment, and held the legal title in trust for the plaintiff.

We come, now, to the second judgment involved in the defendant Smith's claim of estoppel. The sheriff, by his certificate to Barnes, trustee, as purchaser at the sale made under the execution against the Northern Security Company, undertook to convey to him merely and only all of the right, title, and interest, if any, which such company had in the land, and we have held that it had none. Smith's claim, however, is not based upon this judgment only, but upon the judgment thereafter rendered in the action to quiet title, wherein Merritt and Fairchild were plaintiffs. More than one reason exists why Smith cannot, through privity with Merritt and Fairchild, avail himself of the latter. To permit him to do so would be to allow him to take advantage of his own wrong; for it was his improper act in leaving the first judgment above mentioned of record after he had surrendered his tax title to the state and received back the amount paid therefor, and by his affirmative act in recording the judgment in the office of the register of deeds, which gave color to the right of the sheriff to levy upon the supposed interest of the Northern Security Company acquired under such judgment. We are not prepared to say that it was his legal duty to proceed affirmatively to remove the cloud upon the plaintiff's title created by the

judgment, but his act in recording it in the office of the register of deeds was both fraudulent and illegal. The trustee in bankruptcy, when he bid in the undivided one-half of the 40 at the execution sale against the Northern Security Company, got no better title than such company had; nor did the subsequent purchase by Merritt and Fairchild from such trustee place them in any better position than that occupied by the Northern Security Company so far as concerns the plaintiff's right to the undivided one-fourth interest in the 40. In such cases the rule of caveat emptor applies. Johnson v. Laybourn, 56 Minn. 332, 57 N. W. 933.

But, this aside, Smith was not a bona fide purchaser of the Merritt and Fairchild title, if they obtained such. If he had any rights under the first judgment, he held them, as we have already declared, as trustee for the plaintiff, and when the alleged interest in the Merritt and Fairchild title came to him it merely placed him in the position of one who, after acquiring title impressed with a trust with knowledge of all the facts, and thus becoming a trustee for the true owner, conveys it to a bona fide purchaser, and thereafter reacquires it from him. Smith, therefore, held the interest acquired from Merritt and Fairchild in trust, the same as he did upon his first acquisition of the same. Church v. Ruland, 64 Pa. St. 432, 444. Certainly, knowing all the circumstances of this transaction, and himself having originated the condition which resulted in the attempts to deprive the plaintiff of title, he could not assert the Merritt and Fairchild title as against her.

This brings us to the Torrens title. We have already adverted to the fact that the plaintiff was married to one Arnold in or about 1899, some seven years prior to the petition for the summons in the registration proceedings, and in the judgment last mentioned (the Merritt and Fairchild judgment which we have also referred to as the second judgment) she was designated a party defendant under the name of "Eliza M. Arnold (née Merritt)"; whereas, in the summons in the Torrens proceedings she was designated as "Eliza M. Merritt," and this notwithstanding the fact that the same Merritt who was one of the plaintiffs in the former action verified the petition for the Torrens summons. As we have stated, the plaintiff

had for years resided in California, no personal service was had upon her, and she in no way appeared in the proceedings. We have here no question of bona fide purchaser to consider, and we hold that this proceeding was not binding upon her so far as the defendant Smith is concerned; she not having been sufficiently named in the summons.

Mr. Justice Bunn has recently delivered an opinion upon a kindred question in Riley v. Pearson, 120 Minn. 210, 139 N. W. 361, and the reasoning of that case is applicable here, as is also that of Baart v. Martin, 99 Minn. 197, 108 N. W. 945, 116 Am. St. 394. The essence of these decisions is that failure to name a known party defendant in published service is a fraud upon the court, which vitiates the judgment as to such party on collateral attack. This court adheres to the rule that, in cases where there is no personal service, care must be taken to name the defendant correctly, and we have held that the use of a wrong initial will prevent the acquisition of jurisdiction over the real party defendant. D'Autremont v. Anderson Iron Co. 104 Minn. 165, 116 N. W. 357, 17 L.R.A. (N.S.) 236, 124 Am. St. 615, 15 Ann. Cas. 114. See, also, Clary v. O'Shea, 72 Minn. 105, 75 N. W. 115, 71 Am. St. 465; 2 Dunnell, Minn. Dig. § 7832. Marriage confers upon the woman the husband's surname. 2 Bishop, Marriage, Divorce & Separation, § 1622. There was, therefore, a misnomer of the plaintiff. See Freeman v. Hawkins, 77 Tex. 498, 14 S. W. 364, 19 Am. St. 769. The Torrens system requires strict application of the rule stated, because of its drastic results and of the limited period within which the proceedings may be reopened. Furthermore, the reasons for the application of the rule apply with peculiar force in the present case, for it must be deemed that the applicant, who verified the petition for summons in the registration proceedings, knew at the time of his verification that the plaintiff's name was not Merritt, but Arnold. Moreover, the burden was upon the defendant to establish a valid title in himself under the registration proceedings. We hold that the defendant H. E. Smith & Co. holds the 2/32 interest in the 40 in trust for the plaintiff.

2. The court awarded the plaintiff $2,000, with interest, for the

1/32 interest in the land which Smith conveyed to Jennings; this being the amount received by Smith therefor. This was correct.

3. The court awarded the plaintiff as damages the value of 5/32 of the land on the theory that by the defendant's fault such interest therein was lost to her, and the question is raised whether it was justified in so doing. We think it could not be questioned that if the defendant Smith had obtained the title to this interest in the land under the first judgment, and the same had passed into the hands of a bona fide purchaser, he would have been liable for its then value, and such would have been the measure of damages; and, as we have held that the Northern Security Company title, if any, was in effect divested by its subsequent acts done by Smith, it is difficult to see why the same result as to liability for damages should not follow the abortive attempt to acquire the land, if its loss to the plaintiff was caused thereby. It is true that the plaintiff could have brought an action, if commenced in due time, to have the judgment vacated; but she was not required to do so, especially in view of the fact that she had no knowledge of its existence until many years afterwards, and until the subsequent proceedings mentioned had been commenced. Nor can it be held that it was her duty to anticipate that some one, by unfounded and unwarranted legal proceedings, would attempt to divest her of this property. Of course, had it appeared that she had knowledge of any such attempt and had remained inactive, a different question would be presented.

The rule of damages for tort in this state is that "the perpetrator of a tort is responsible for the direct and immediate consequences thereof, whether they may be regarded as natural or probable, or whether they might have been contemplated, foreseen, or expected, or not. It is not necessary to the liability of a wrongdoer that the result which actually follows should have been anticipated by him. It is the general character of the act, and not the general result that the law primarily regards." Watson v. Rinderknecht, 82 Minn. 235, 238, 84 N. W. 798, 799.

It cannot be disputed that the plaintiff's loss traces back to the first judgment, which must be deemed to have been the cause of causes. It must be remembered that the defendant Smith at no time

took any steps to arrest the consequences of his fraudulent act, or to notify the plaintiff of the danger of losing her property, and we do not deem it essential to her right to recover actual damages—and only such were allowed—that Smith participated in the acts of others, which resulted in her loss, occurring subsequently to the matters recited concerning the Security Company's judgment. However, while the findings charging the defendant with such participation are, perhaps, in some respects unwarranted, the general conclusion that he participated therein is sustained by the evidence. Transactions of the character revealed here are rarely, if ever, carried on in the open, and if a plaintiff is bound to establish them at all, such must ordinarily be done by circumstantial evidence. If Smith's hands were clean in these transactions, it would seem that he could easily have offered evidence reasonably tending so to show, and this we fail to find in the record.

We have adverted to some of the features of the case in relation to the matter under consideration in the first part of this opinion. In addition thereto, we will say that, while it is not an impossible theory that Smith did not know that the trustee in bankruptcy of his insolvent banking concern was proceeding to impound the apparent interest of the Northern Security Company in the land to pay the obligation owing by it to the bank, yet we think it so improbable that the court was justified in rejecting it. It is a significant fact in this connection that, after the judgment in the Merritt and Fairchild action, Smith is found receiving a conveyance from them apparently, and in effect, without consideration from him or profit to them. So, therefore, if participation in the acts of the others involved in the transactions under consideration be considered to be essential to Smith's liability, we consider that such was established.

But even if there was no collusion between Merritt and Fairchild and Smith, the latter is in no position to complain that his acts in leaving the first judgment of record and in placing a certified copy thereof on the land record had the effect he evidently intended that they should have, namely, the inducement of others to believe that his Security Company, which was really himself, owned the property, thus misleading others to the plaintiff's damage, for which he

must respond. Again, can he be held blameless and free from liability when he stood by and, though knowing that the property was being dealt with as belonging to his company, neither made protest nor notified the true owner, and this when the course of events which culminated in such situation was originally initiated by his own wrongful act, and when he was at least profiting from the application of the proceeds of the property upon the debts of his bank? He admits that about November 23, 1899, he learned that the record title to an undivided half of the 40 stood in the name of the plaintiff's former husband and his brother. He must also be held to have known that if the Security Company failed to pay its debts it might be called to account therefor in the courts, and, by reason of his relation to the company, he must have had knowledge of such nonpayment in fact, and that the judgment creditor might be misled by his attempt to make it appear that his company owned the land and thus be induced to proceed against it, with the consequent probability of its coming to some one from whom the plaintiff could not recover it. We hold that the defendant Hansen E. Smith is liable for the value of a 5/32 interest in the land.

The next question, then, is whether the court's award of damages is based upon the correct theory as to amount and time of estimation; the former question being dependent upon the answer to the latter. This action is not based on the defendant's neglect of duty, as administrator, in failing to inventory the property and to dispose of it for the benefit of the estate. If it were so grounded, it would necessarily result in the defendant's favor so far as concerns the damages now being considered; for the estate was insolvent to such an extent that the property would have been insufficient to pay the debts. But as the land was not disposed of it became the property of the plaintiff, and her damages must be assessed as of the time when her title was divested. From what we have said, this occurred when Merritt and Fairchild obtained their judgment—the second judgment—quieting title, which accords with one of the defendant's claims. We find no ground for disturbing the court's determination as to value.

But the court erred with reference to the interest to be allowed up-

on the value of the 5/32 interest in question. The Merritt and Fairchild judgment was entered on August 17, 1906, and interest should have been allowed from that date.

We cannot overturn the court's conclusion that the plaintiff was not guilty of laches.

The theory of the defendant's liability which we have adopted is the only one which we have found it necessary to discuss, and upon the whole case, after giving due weight and effect to all errors assigned or committed below, we conclude that the order appealed from should be affirmed, and the case remanded, with direction to modify the findings of fact and conclusions of law respecting interest in accordance with this opinion.

HOLT, J. (dissenting).

Regretting that my conclusions in this case have cast the burden upon my Associate to prepare the opinion of the court, I wish to state briefly why, in my judgment, there should have been a reversal, instead of an affirmance.

It is to be noted that the complaint charges active fraud against defendant, in that, from the time of his appointment as administrator until the Torrens judgment, every move of his was to deprive the plaintiff of her property. The burden was upon plaintiff to prove these allegations, or at least the fraud upon which recovery could be predicated. Plaintiff cannot prevail on proof of constructive fraud, for whatever of plaintiff's rights, if any at all, Smith obtained under that doctrine were restored to her by the transfer to the state of the tax certificate upon which the Northern Security Company judgment to determine adverse claims was based. Therefore active fraud must be proven.

That Smith had formed no intention up to December, 1898, to deprive either plaintiff, the estate of Cassius C. Merritt, or any judgment lienholder of this property is perfectly clear to me. Within three months after Smith entered the employ of Cassius C. Merritt, the latter died, leaving an estate hopelessly insolvent. On account of a $50,000 insurance policy on the life of the deceased having been assigned by him to plaintiff some time prior to his death, it

was thought best not to have her act as executrix, although she was so named in the will, and upon the advice of her attorney and the brothers of deceased, Smith was appointed administrator with the will annexed. It appears that in the settlement of the estate several years were consumed in litigation, but with profit both to Smith and the creditors, for the former was allowed some $10,000 for his services by the probate court, and the estate, which was inventoried and appraised at but $27,000, realized about $100,000.

It is quite clear, also, that through no design or scheme of Smith was the land in dispute not inventoried or sold to pay debts in the due course of administration of the estate, as was all the other real estate of which Cassius C. Merritt died seised. Undoubtedly this land was omitted through ignorance that the Merritts had any interest therein. Cassius C. and Andrus R. Merritt had been partners for some years previous to the former's death, buying and speculating in lands, especially such as might contain iron prospects. The deed from Knudt Olson ran to Cassius C. Merritt and Andrus R. Merritt to an undivided one-half of the 40. Smith testified that he did not know that the estate had any interest in this land, for it was not entered on the books of Cassius, but was entered as the Knudt Olson lands, though upon a wrong description, on the partnership books in the handwriting of Cassius, and from those books it appeared, also, that prior to January, 1893, it had been transferred to the Great Western Company for its stock.

No sinister motive should be imputed to Smith in the purchase of the forfeited tax certificate by an employee sent by Smith to attend and bid at the sale, and who bid in more than 30 scattered tracts in the vicinity of the supposed mineral area. The purchase at the void tax sale was no doubt done without any knowledge that the Merritts ever owned any interest in this land, for when, after Smith's discharge as administrator, an abstract procured showed that the government title to an undivided half stopped in Cassius C. and Andrus R. Merritt, Smith at once wrote to Alfred Merritt, informing him of the situation. He later wrote Andrus in regard to the matter. Smith was justified in assuming at that time that Alfred Merritt, who had taken assignments of nearly all of the $70,000 judg-

ments docketed against his brothers Cassius and Andrus, was the only one interested in the 40. With these judgments constituting valid liens upon the real estate of Cassius and Andrus, it could not be anticipated that there was any interest of value to the devisee of Cassius, this plaintiff. At the administrator's sale other tracts of valuable mineral lands went for a few dollars. Alfred Merritt was not only the one most interested in the estate because of the judgments he held, but was the one of the brothers who advised and assisted plaintiff. He was also the one who, at the administrator's sale, secured nearly all, if not all, of the tracts of land having any mineral prospects. So that there is no reason for claiming that the evidence shows any intention to defraud up to the time the Northern Security Company instituted the suit to quiet title.

I quite agree with my Brethern that, since Smith had not been discharged as administrator when the forfeited tax certificate was purchased by a corporation under his management and control, the purchase was a breach of trust, and the cestui que trust could pursue and claim whatever title was procured thereby, and this, even though the purchase was made in good faith and without knowledge that Cassius C. Merritt had any interest in the land. And it is also good law to hold that the Northern Security Company, being Smith's creature, could not, by an action to quiet title begun after Smith's discharge as administrator, obtain a title divested of the trust. Correct is also the conclusion that when, after obtaining that judgment, the Northern Security Company transferred the tax certificate on which it was based to the state, the judgment and all interest of the Northern Security Company, as well as of Smith, in the land, was completely wiped out. From that time on Smith stood in no fiduciary relation to plaintiff or the estate, and if thereafter he committed any wrong to plaintiff's damage, he must be proven guilty like any other wrongdoer before he can be held liable. It was for the plaintiff to plead and prove, and the court to find, that plaintiff was deprived of her property, or that defendant has obtained her property, by an actionable wrong or fraud, because that which he did when he stood in a fiduciary relation to plaintiff, namely, the purchase of

the tax certificate and the suit based thereon, became a nullity by the subsequent transfer to the state of the certificate.

It does not seem to me that plaintiff maintained this burden of proof. Fraud and wrong conduct is never presumed; and we expect the one who makes such accusation to produce all the available evidence.

The only evidence which may give any semblance of wrong conduct on the part of Smith is, first, the recording of the judgment quieting title in the Northern Security Company, after the transfer had been made to the state. This may show a wrongful intent, but that is all; for the recording of the judgment, then virtually satisfied by the transfer to the state, gave no life or validity to the same, and can constitute no step in depriving plaintiff of her property. And if my Brethren be right in holding that the registration of title under the Torrens act did not deprive plaintiff of her interest because she was made defendant under her former name, then it follows that the suit of the Northern Security Company to quiet title did not affect her interest at all, for she was not made a defendant under the name of Arnold, her true name then, but Merritt. Could it for a moment be claimed that an action for conversion or for defrauding plaintiff of her property could have been maintained against Smith at any time prior to the time Merritt and Fairchild obtained judgment in their suit to quiet title? Certainly not.

Secondly, it is contended that, because Smith bargained for a quarter interest of the title obtained by Merritt and Fairchild in their action to determine adverse claims, it proves that Smith instigated their acts in procuring their judgment determining plaintiff's adverse claims. This conclusion seems far-fetched. There is no moral or legal wrong in a bankrupt attempting to buy property from the trustee in bankruptcy, if he can obtain the means so to do. Friends may come to the aid of a bankrupt, or he may be able to make a deal with others whereby he may procure part of his former estate. Nor should it be forgotten that Smith, after the Northern Security Company judgment had been recorded, acquired an undivided one-fourth interest in the 40 by an execution sale under a judgment obtained by Jane E. and Edgar B. Northrup against one

Crosley, to whom Knudt Olson conveyed an undivided one-fourth at the same time he gave the deed to Cassius C. and Andrus R. Merritt for the undivided one-half. There can be no question on this record that Smith thereby became the owner of an undivided fourth in the land by a perfectly legitimate transaction, not to be questioned in any way by plaintiff. This one-fourth interest passed to his trustee in bankruptcy, and was conveyed to Merritt and Fairchild by the trustee for $250, one-fourth of this one-fourth Merritt and Fairchild agreed to convey to Smith, and Smith procured one Barrows to buy one-half of Smith's part; Barrows paying enough for such part to pay the whole amount Smith had agreed to pay Merritt and Fairchild. It would seem that the interest which Smith thus procured from Merritt and Fairchild in the land formerly owned by him should be immune from any claim by plaintiff, and the holding to the contrary by the court below was error.

Moreover, there is no testimony that Smith counseled the assignee of the Merchants Bank, a partnership composed of Smith and his brother, to sue the Northern Security Company and obtain a judgment against it, nor that Smith instigated the trustee in bankruptcy to proceed to sell and bid in the interest of the Northern Security Company in this land to satisfy that judgment, nor that he procured Merritt and Fairchild to buy the sheriff's certificate from the trustee, nor that he induced Merritt and Fairchild to bring the action to determine adverse claims. Phelps, the assignee, Barnes, the trustee in bankruptcy, Merritt, and Fairchild all appear to have been residents of Duluth. Merritt is a nephew of Cassius, and it seems through him, or his father, plaintiff was informed of the alleged cause of action she now asserts. With the burden of proof on plaintiff, there is no excuse for not calling these persons just mentioned to the witness stand. There can be no inference that an assignee in insolvency or a trustee in bankruptcy is in any manner under the control of the insolvent or bankrupt, or does his bidding. On the contrary, the presumption should be that such an official acts properly and in the interest solely of the creditors. Smith could not be expected to call either Merritt or Fairchild, because it appears that an action is now pending in the Federal courts wherein

Smith attempts to set aside this very sale of the sheriff's certificate transferred by the trustee in bankruptcy to Merritt and Fairchild.

Furthermore, the seventeenth finding of the court, which is the one upon which fraud on the part of Smith on the controlling or pivotal issue in the case is predicated, is so evidently based on a misconception of the evidence that a new trial should be had. It will not do to say that the evidence would support a finding, had it been made, that the fraud mentioned in this finding related to the Merritt interest, instead of to the Crosley, which in all fairness it refers to. Fraud was charged in the complaint and denied in the answer, and hence, without a finding on this issue, judgment cannot be rendered in favor of plaintiff, no matter how conclusive the evidence is considered to be. The finding mentioned can relate to none other than the Crosley interest, for that is the only interest Smith ever personally claimed in the 40 prior to his purchase from Merritt and Fairchild. He scheduled it as his in the bankruptcy proceeding. If any assertion was ever made to the Cassius or Andrus Merritt interest, it was that it was owned by the Northern Security Company.

The seventeenth finding is as follows: "That a petition in bankruptcy was filed in the United States court for the district of Minnesota, Fifth division, wherein Hansen E. Smith and James P. Smith, copartners as the Merchants Bank, and Hansen E. Smith individually, were adjudged bankrupts on the 9th day of November, 1904, and in said proceeding the defendant L. A. Barnes was appointed trustee in bankruptcy of the said defendants. That in said proceedings the defendant Hansen E. Smith claimed the ownership of the undivided one-fourth of the lands and premises hereinbefore mentioned under the judgment set forth in the last paragraph, and by such false claim caused the said interest in said land belonging to the plaintiff to be claimed by the trustee and creditors of his estate in bankruptcy, and that but for the false claim of title under the said judgment recorded as aforesaid no claim of title could or would have been made in said bankruptcy proceeding bid in of the defendants herein. That such proceedings were had and taken in said bankruptcy proceeding that the defendant L. A. Barnes, as trustee for said bankrupt estate,

sold the interest so claimed as hereinbefore set forth to David L. Fairchild and Thomas A. Merritt. That said sale was procured and caused by the defendant Hansen E. Smith, and that at or about the time of said sale an agreement was made and entered into between the defendant Hansen E. Smith and said Fairchild and Merritt that the undivided three-sixteenths of said lands and premises should be conveyed to him, and that no consideration was paid by the defendant Hansen E. Smith, and the said undivided three-sixteenths was and is out of the undivided one-fourth of the said lands and premises belonging to the estate of said Cassius C. Merritt and the other undivided one-sixteenth was at said time lost to the estate and to plaintiff by and through the act of the defendant Hansen E. Smith, and three thirty-seconds out of the three-sixteenths contracted for was subsequent thereto and at about said time lost to the estate by and through the act of said Hansen E. Smith in selling the same to one Walter A. Barrows, Jr."

Aside from the fact, above pointed out, that the undivided one-fourth interest in the 40 which Smith personally acquired under the execution sale against Crosley, and which went to his trustee in bankruptcy, is confused with the interest once owned by the Merritts, the finding is wrong as to the fact that no consideration was paid, because the testimony is that Smith procured Barrows to take one-half of the one-fourth that Merritt and Fairchild had agreed to transfer to Smith, and to pay therefor the whole amount that Smith was to pay, and the finding is demonstrably wrong in stating that the undivided three-sixteenths that Merritt and Fairchild had agreed to convey to Smith came from the Cassius C. Merritt interest. Assuming that, under the execution sale against the Northern Security Company, Barnes, the trustee in bankruptcy, acquired anything, it was the alleged interest of Cassius C. and Andrus R. Merritt, to wit, an undivided one-half of the 40; he assigned the sheriff's certificate to Thomas A. Merritt and David L. Fairchild, the latter specifically conveyed one-sixteenth (or one-eighth of undivided one-half) of this title to Smith and one-sixteenth to Barrows for Smith, the Cassius and Andrus interest being transferred together, it would seem that in the title Smith obtained only one thirty-second thereof came from the Cassius C. Merritt interest.

But I am also of the opinion that in no event is plaintiff entitled to any interest in the land. She was deprived of neither money nor land by the recording of the judgment quieting title brought by the Northern Security Company, nor was she deprived of anything by the execution sale made by the trustee in bankruptcy of the interest of the Northern Security Company in this land, or by the sale of the sheriff's certificate by the trustee to Merritt and Fairchild, for no better or other title was obtained thereby than the one had by the Northern Security Company, and we are all agreed that that was nothing. With nothing to stand on except the undivided one-fourth which was derived through the bankrupt, Smith, from Crosley, Merritt and Fairchild claimed an undivided three-fourths in the land, and brought suit to quiet the title thereto and determine plaintiff's adverse claim. She was made a defendant under her proper name, the judgment alone is in the record, and there is nothing to indicate that the court did not obtain jurisdiction, nor is there any intimation that the proceedings were not perfectly regular. She was under no disability. It is not claimed that any fraud was practiced on her which prevented her from making a defense. This judgment should forever estop her from claiming the land as against Merritt and Fairchild and those in privity with them. Smith derives his title, as far as the Merritt interest is concerned, solely from Merritt and Fairchild.

I am not against a holding to the effect that, upon proper proof and findings that Smith fraudulently instigated and procured Merritt and Fairchild to institute the suit wherein the judgment by way of estoppel deprived plaintiff of her land, she might successfully maintain an action for damages; for such a cause of action would not necessarily be involved or determined in a suit to quiet title or to determine adverse claims to lands. After the transfer to the state there certainly was nothing of value or merit in the judgment quieting title in the Northern Security Company, if there ever was as to plaintiff; she not being named by her true name as a party defendant. Since that time Smith owed plaintiff no duty and did not stand in any fiduciary relation. Therefore he could buy the title acquired by Merritt and Fairchild free from plaintiff's claims as well as any one else.