**Wilford Henry GERDIN, Appellant,**

v.

**PRINCETON STATE BANK, Louis L. Hoffman, et al., Respondents.**

**No. CX–85–204.**

Court of Appeals of Minnesota.

July 9, 1985.

Review Granted Sept. 30 and
Oct. 18, 1985.

Robert J. Sheran, Lindquist & Vennum, Minneapolis, William S. Rosen, St. Paul, for Wilford Henry Gerdin.

Charles L. Nail, Arnold & McDowell, Minneapolis, for Princeton State Bank.

John J. McDonald, Jr., Phillip A. Cole, Lommen, Nelson, Sullivan & Cole, P.A., Minneapolis, for Louis L. Hoffman, et al.

Heard, considered and decided by POPO-VICH, C.J., and FOLEY and WOZNIAK, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant appeals the trial court's granting of summary judgment in favor of respondents. Appellant claims the trial court erred because genuine issues of material fact existed. We reverse and remand for trial on the merits.

### FACTS

Gerdin Transfer, Inc., defaulted on its mortgage held by respondent Princeton State Bank. The bank retained Louis L. Hoffman and John C. Hoffman, attorneys, to initiate mortgage foreclosure proceedings. The Hoffmans were told it would be necessary to extinguish certain tax liens. Appellant Wilford Gerdin saw the notice of foreclosure sale in a local newspaper. Out of curiosity, Gerdin decided to attend because he and his brother owned the building some years earlier. Gerdin had no intention of buying or bidding on the building.

At the sale, Gerdin had his only contact with John Hoffman. Gerdin, Hoffman and

the sheriff were the only persons who attended the sale. In his deposition, Gerdin recalled the conversation between himself and Hoffman as follows:

Question: What did you say to John, do you recall?

Answer: Well, we talked about the sale of the building, and he said he had a price of fifty-five thousand some dollars, and if we bid a dollar more why he wasn't going to raise it—that was his top price, and if there were no other bidders I would get it.

Hoffman did not disclose the existence of over $50,000 in tax liens on the property.

This was Gerdin's sole contact with Hoffman. Gerdin did not retain either of the Hoffmans to represent him. John Hoffman made no representation to Gerdin regarding the title of the building. Gerdin did not inspect the property's abstract, have the title examined by an attorney, or have the property appraised.

After speaking with Gerdin, Hoffman and the sheriff agreed to postpone the sale for an hour if Gerdin wanted to bid. Gerdin rushed to Princeton State Bank to get a certified check so he could bid on the building. He withdrew money from his checking account and arranged a $10,585 loan.

Gerdin returned to the sale, bid $10 more than Hoffman, and purchased the property. Following the foreclosure sale, taxing authorities advised Gerdin there were unpaid tax liens on the property in excess of $50,000. Gerdin learned the foreclosure proceedings conducted by the Hoffmans failed to extinguish the liens because the Hoffmans failed to serve required notices. The amount paid by Gerdin at the foreclosure sale and the amount of the unpaid tax liens far exceeded the value of the property.

Gerdin commenced a suit against the Hoffmans and Princeton State Bank. Gerdin claimed an attorney-client relationship existed between himself and the Hoffmans and that the Hoffmans negligently failed to extinguish the tax liens. Gerdin alleged the bank owed him a duty to either extinguish the tax liens or disclose their existence.

Respondents moved for summary judgment. The trial court granted respondents' summary judgment finding no attorney-client relationship existed between Gerdin and the Hoffmans as a matter of law. The trial court also found the bank did not have a duty to extinguish or disclose the existence of junior tax liens.

## ISSUES

1. Were there material issues of fact regarding the existence of an attorney-client relationship between Gerdin and the Hoffmans?

2. Did the bank have a duty to extinguish or disclose the existence of junior tax liens of record?

## ANALYSIS

1. *Standard of Review.*

██ "A party is entitled to a trial unless there are no material questions of fact and one party is entitled to judgment as a matter of law." *International Union of Operating Engineers v. Krejec*, 366 N.W.2d 388, 390 (Minn.Ct.App.1985); *see* Minn.R. Civ.P. 56.03. "This court must view the evidence in the light most favorable to the party against whom the motion for summary judgment was granted." *Carney v. Central Life Assurance Company*, 366 N.W.2d 351, 353 (Minn.Ct.App.1985).

2. *Attorney-Client Relationship.*

██ The existence of an attorney-client relationship is necessary to maintain a malpractice action against an attorney. *See Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 692 (Minn.1980). Gerdin never intended to retain the Hoffmans, the Hoffmans never intended to represent Gerdin, and Gerdin knew John Hoffman represented the bank. Therefore, there can be no attorney-client relationship under a contract theory of law. *See Langeland v. Farmers State Bank*, 319 N.W.2d 26, 30 (Minn.1982).

■ Gerdin also claims the facts support an inference of an attorney-client relationship under a negligence theory.

> [A]n attorney-client relationship [may] be established, under a negligence theory, without any express agreement. According to this theory, the relationship is created whenever a person seeks and receives legal advice from a lawyer under circumstances in which a reasonable person would rely on the advice.

*Id.* (citations omitted). The uncontradicted facts in this matter show Gerdin never met Louis Hoffman. Gerdin's sole contact with John Hoffman did not create an attorney-client relationship. Hoffman merely stated he was bidding on the property for the bank at a certain price. Hoffman did not make any statement regarding the title to the property or give any other legal advice. Hoffman did not make any statement which would lead a reasonable person to believe an attorney-client relationship had been created. *See id.* at 30–31. The trial court correctly concluded:

> An attorney does not make a client out of everyone to whom he announces the amount of the prospective bid at a sheriff's sale nor does he insure to all persons attending that the amount of his bid is wisely and knowingly arrived at. Such assurance is extended only to the client on whose behalf the attorney attends the sale.

The trial court properly held there was not an attorney-client relationship between Gerdin and the Hoffmans.

### 3. *Duty to Disclose Tax Liens.*

■ The trial court granted summary judgment in favor of the bank finding the bank did not have an affirmative duty to extinguish or disclose the existence of the tax liens. The trial court correctly determined the bank did not have a duty to extinguish the tax liens under either 26 U.S.C. § 7425 or Minn.Stat. § 270.69, subd. 7 (1984). Minn.Stat. § 507.20 (1984), requiring disclosure of known encumbrances, does not apply in this matter because the bank was a mortgagee and not a grantor. We believe, however, that the trial court erred when it determined the bank had no legal duty to disclose the existence of the tax liens.

■ Generally, the rule of caveat emptor applies to purchasers at judicial sales.

> The purchaser at such sales knows that nothing can be sold, except the interest of the parties to the suit, and it is for him to ascertain, before purchasing, what that interest is.

*Barron v. Mullin,* 21 Minn. 374, 377 (1875); *see Bishop v. LaBree,* 207 Minn. 330, 332, 291 N.W. 297, 298 (1940); *Arnold v. Smith,* 121 Minn. 116, 132, 140 N.W. 748, 754 (1913); *Johnson v. Laybourn,* 56 Minn. 332, 333, 57 N.W. 933, 933 (1894).

■ The rule of caveat emptor, however, has been limited by the courts where necessary to prevent injustice.

> Like most other general rules and maxims of the common law, the rule as to the applicability of the rule of caveat emptor has its exceptions and limitations, and it must be considered in connection with other principles of the common law which are equally fundamental and dominating within their respective spheres.

50 C.J.S. *Judicial Sales* § 39(f)(3), at 654 (1947). We are hesitant to strictly apply the rule of caveat emptor where, as here, misrepresentation has been alleged. *Cf. Barron,* 21 Minn. at 377.

■ The liability for nondisclosure of relevant facts is discussed in the Second Restatement of Torts.

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
>
> (2) One party to a business transaction is under a duty to exercise reasonable care

to disclose to the other before the transaction is consummated,

\* \* \* \* \* \*

(b) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

\* \* \* \* \* \*

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551 (1977). Under these principles, we believe the bank had a duty to disclose the existence of the tax liens. The bank knew about the existence of the tax liens. John Hoffman claims he did not know about the tax liens, but this is a question of material fact to be determined by a jury.

John Hoffman, the bank's agent, failed to disclose the existence of the tax lien. Hoffman was the only other bidder at the sale, and the sale was postponed to allow Gerdin to make a higher bid than the bank. Gerdin borrowed from the bank in order to bid on the building. Since the prevailing practice is to have tax liens extinguished prior to a foreclosure sale, Gerdin could reasonably have believed such liens would have been disclosed had they existed. Under these objective circumstances, we hold the bank and its agent had a duty to disclose the existence of the tax liens.

### DECISION

An attorney-client relationship was not created by attorney John Hoffman's disclosure of the terms of his bid prior to a foreclosure sale.

John Hoffman's statement regarding the purchase price of the property, Hoffman's agreement to postpone the judicial sale in order to allow Gerdin to bid, and the bank's loan to Gerdin for the purpose of purchasing the property were objective circumstances creating a duty of the bank and its agent to disclose the existence of the tax liens. We reverse and remand for trial on the merits.

Reversed and remanded.