**Louis VEIT, Appellant,**

v.

**James R. ANDERSON, et al.,
Respondents.**

**No. C3–88–673.**

Court of Appeals of Minnesota.

Aug. 16, 1988.

Steven Rowley, Thomas W. Van Hon, Rowley Law Offices, Redwood Falls, for appellant.

John Sheran, Farrish, Johnson & Maschka, Mankato, Todd M. Johnson, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for respondents.

Heard, considered and decided by FOLEY, P.J., HUSPENI and SHORT, JJ.

## OPINION

SHORT, Judge.

Appellant Louis Veit brought an action against respondents James R. Anderson and the Farm Company of Lyon County (Anderson) for legal malpractice and fraud. The trial court granted summary judgment for Anderson. We reverse, and remand the case.

## FACTS

Louis Veit is a farmer in Lyon county. James Anderson is an attorney and a licensed real estate broker. Anderson operates his real estate business through a corporation, the Farm Company of Lyon County.

Anderson has done business with Veit both as an attorney and as a realtor. Anderson represented Veit on a medical malpractice claim in 1978. In 1981, Veit and Anderson entered into a real estate listing agreement for sale of some of Veit's farmland. The property was never actually sold.

On June 13, 1983, Veit went to see Anderson at Anderson's law office. Veit was being sued over a past due fuel bill, and asked Anderson for legal assistance. Anderson refused to represent Veit in the collection action. Anderson and Veit then discussed Veit's financial situation, and the possibility that Veit should try again to sell some of his farmland. Veit alleges that Anderson suggested that he sell the land. Anderson does not specifically deny this allegation. Their discussion resulted in a real estate listing agreement under which Anderson agreed to try to find a buyer for 80 acres of Veit's land for $160,000.

Two days later, on June 15, 1983, Anderson presented Veit with a purchase agreement signed by Lynn Beebout, another neighboring farmer. Beebout offered to buy 100 acres of Veit's land for $155,000 ($1,550 per acre). Veit, his wife, and his son went to Anderson's law office to discuss the purchase agreement. Veit alleges that Anderson told him that Veit's signature on the purchase agreement would allow Anderson to investigate whether Veit could convey marketable title to his property, and if it turned out that Veit was unable to convey title, the purchase agreement would not be binding. Anderson denies making this statement. He admits discussing the terms of the purchase agreement with Veit, but alleges that Veit fully

understood the terms of the purchase agreement and its legal implications.

Veit alleges that he signed the purchase agreement in reliance on Anderson's representations that it would not be binding if he was unable to convey clear title to the property. On June 16, 1983, the day after he signed the purchase agreement, Veit called the Federal Land Bank and the Production Credit Association, who held mortgages on his property. The agencies were unwilling to release their mortgages under the terms of the purchase agreement. Veit believed that the sale of the farmland was off. However, Beebout threatened to sue him for specific performance of the purchase agreement, and Anderson recorded the listing agreement and the purchase agreement in order to make a claim against Veit for his commission.

Veit retained another attorney to assist in clearing title to his property. Veit also located another buyer who was willing to pay $240,000 for 150 acres of land ($1,600 per acre). Veit alleges that he "paid costs in excess of $12,000" (including a $2,000 payment to Anderson) to avoid the threat of lawsuits arising from the purchase agreement. He therefore brought this action against Anderson, alleging that Anderson committed legal malpractice by advising him that the purchase agreement was not binding if he was unable to clear title, and that Anderson fraudulently induced him to sign the purchase agreement by misrepresenting its legal implications.

The trial court granted Anderson's motion for summary judgment. The trial court ruled that Veit has no claim against Anderson for legal malpractice, because Veit and Anderson did not have an attorney-client relationship, and that Veit has no claim against Anderson for fraudulent misrepresentation of the effect of the purchase agreement, because the purchase agreement is "clear and unambiguous" and "speaks for itself."

## ISSUES

1. Did the trial court properly grant summary judgment to Anderson on Veit's legal malpractice claim?

2. Did the trial court properly grant summary judgment to Anderson on Veit's fraud claim?

## ANALYSIS

Summary judgment is appropriate where the record shows that there is no genuine issue as to any material fact, and it is clear that the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On review of a summary judgment, this court must determine whether there are any genuine issues of material fact, and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to Veit, the non-moving party. *See, e.g., Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

Summary judgment was inappropriate in this case. It is not clear as a matter of law that an attorney-client relationship is absent between Veit and Anderson, or that Anderson is entitled to summary judgment on Veit's fraud claim. If there is an attorney-client relationship, the dispute as to whether Anderson misrepresented the legal effect of the purchase agreement becomes a genuine issue of material fact.

## I. *Attorney–Client Relationship*

■ To prevail on a claim of legal malpractice, a plaintiff must show: 1) the existence of an attorney-client relationship; 2) negligence or breach of contract on the part of the attorney; and 3) that the attorney's negligence or breach proximately caused the plaintiff damage. *See Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W. 2d 686, 692 (Minn.1980). The trial court granted summary judgment for Anderson on Veit's legal malpractice claim, ruling that "it cannot be disputed that no attorney-client relationship existed" between Anderson and Veit.

■ Minnesota courts have recognized both a "contract theory" and a "tort theory" of the attorney-client relationship. An attorney-client relationship exists under the "contract theory" if the parties explicitly or

implicitly agree that the attorney will provide legal services to the client. *See Togstad*, 291 N.W.2d at 693; *Ronnigen v. Hertogs*, 294 Minn. 7, 199 N.W.2d 420, 422 (1972); *Christy v. Saliterman*, 288 Minn. 144, 150, 179 N.W.2d 288, 294 (1970); *Gerdin v. Princeton State Bank*, 371 N.W.2d 5, 7–8 (Minn.Ct.App.1985), *affirmed*, 384 N.W.2d 868 (Minn.1986). An attorney-client relationship exists under the "tort theory" even in the absence of an express contract "whenever a person seeks and receives legal advice from a lawyer under circumstances in which a reasonable person would rely on the advice." *Langeland v. Farmers State Bank of Trimont*, 319 N.W.2d 26, 30 (Minn.1982), (citing *Togstad*, 291 N.W.2d at 693, n. 4); *see Gerdin*, 371 N.W.2d at 8. "[I]t must * * * be shown that [the attorney] rendered legal advice (not necessarily at someone's request) under circumstances which made it reasonably foreseeable to the attorney that if such advice was rendered negligently, the individual receiving the advice might be injured thereby." *Togstad*, 291 N.W.2d at 693, n. 4.

■ Anderson argues that he and Veit had no attorney-client relationship as a matter of law, because Anderson refused to represent Veit in his collection case, and because Veit did not contract with him to provide legal services in connection with the sale of the farmland. However, even if Anderson and Veit have no attorney-client relationship under a contract theory, they may still have an attorney-client relationship under a tort theory. As a matter of law, Anderson is not entitled to summary judgment if he has shown only the absence of an attorney-client relationship under a contract theory.

Veit alleges that he sought and received inaccurate advice from Anderson about the legal effect of the purchase agreement. Veit knew that Anderson was an attorney, and had consulted him for legal advice in the past. It was arguably reasonable for Veit to rely on Anderson's advice. It is also arguable that Anderson could reasonably foresee that Veit would probably rely on his advice, and might be damaged if the

advice was inaccurate. Thus, on a tort theory, there may be an attorney-client relationship.

If Anderson did advise Veit on the legal effect of the agreement, he may have established an attorney-client relationship with Veit. Whether Anderson actually did advise Veit on the legal effect of the agreement remains in dispute and is a material fact. Summary judgment is inappropriate. We therefore reverse the summary judgment for Anderson on the legal malpractice claim, and remand for further proceedings.

## II. *Fraud*

Veit also claims that Anderson fraudulently induced him to sign the purchase agreement by misrepresenting the legal effect of the agreement. The elements of fraud include a false representation, made with knowledge of its falsity, or without knowlege whether the representation is true or false, and the intention to induce another to act in reliance on the representation. The other party must actually act in reliance on the false representation, and be damaged as a result. The damaged party's reliance on the false representation must also be reasonable. *See, e.g., Burns v. Valene*, 298 Minn. 257, 261, 214 N.W.2d 686, 689 (1974).

The trial court granted summary judgment for Anderson, finding that the purchase agreement is "clear and unambiguous" and "speaks for itself." Anderson argues that the trial court properly concluded, as a matter of law, that Veit had no reasonable basis for relying on Anderson's alleged representations about the legal effect of an unambiguous purchase agreement.

"Where there is an inconsistency between alleged oral promises and the written terms of an agreement, the issue is whether there could be reasonable reliance on the promise." *Johnson Building Co. v. River Bluff Development Co.*, 374 N.W.2d 187, 194 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 18, 1985). Anderson contends that the alleged oral representations in this case are inconsistent with the terms of the written purchase agreement,

and that Veit therefore could not reasonably rely on the oral representations.

Veit alleges that Anderson assured him that his signature on the purchase agreement would allow Anderson to investigate whether Veit could convey marketable title to the property, and that if Veit was unable to convey marketable title, the deal would be off and the purchase agreement would not require Veit to sell the land on the terms provided. Anderson argues that this alleged representation is inconsistent with the written terms of the purchase agreement, which provides:

> Subject to performance by the buyer the seller agrees to execute and deliver a General Warranty Deed (to be joined in by spouse, if any) conveying marketable title to said premises subject only to building and zoning laws, ordinances, State and Federal regulations; restrictions relating to use or improvements of premises without effective forfeiture provision, reservation of any minerals or mineral rights to the State of Minnesota; Utility and drainage easements which do not interfere with present improvements; rights of tenants as follows: (Unless specified, not subject to tenancies.)

The agreement also states above the space for Veit's signature:

> I, the undersigned owner of the above land, do hereby approve the above agreement and the sale made thereby.

The agreement states below the signature space:

> THIS IS A LEGALLY BINDING CONTRACT.

■ The issue presented here is whether the trial court properly concluded as a matter of law that Veit could not justifiably rely on Anderson's alleged oral representations given the "contradictory" provisions of the written agreement. Reliance on oral representations is unjustifiable as a matter of law "only if [a] written contract provision explicitly stated a fact completely contradictory to the claimed misrepresentation." *Johnson Building Co.*, 374 N.W.2d at 194, citing *Clements Auto Co. v. Service Bureau Corp.*, 444 F.2d 169, 179 (8th Cir.1971). When a prom-

ise is not in plain contradiction of a contract or, if contradictory, when it is accompanied by misrepresentations of other material facts in addition to the contradictory intent, the question of reasonable reliance is for the trier of fact. *Johnson Building Co.*, 374 N.W.2d at 194, citing *General Corp. v. General Motors Corp.*, 184 F.Supp. 231, 239 (D.Minn.1960).

■ ■ Whether Veit could reasonably rely on Anderson's alleged representations about the legal effect of the purchase agreement is a question of fact in this case. The provisions of the purchase agreement which Anderson cites do not "plainly contradict" Veit's understanding that the purpose of signing the purchase agreement was to allow Anderson to investigate possible title problems, and that the deal would be off if clear title could not be conveyed. The purchase agreement apparently requires Veit to "convey marketable title" to the property in order to close the sale. However, it is not absolutely clear from the language Anderson cites that Veit was legally obligated to go through with the sale even if he was unable to convey marketable title. Moreover, a lay person reading the purchase agreement could well conclude that it was legally binding even in the event that it was impossible to clear title to the property. Since the language of the agreement does not squarely contradict Anderson's alleged oral representations, the issue whether Veit reasonably relied on the representations is an issue of fact. *See Johnson Building Co.*, 374 N.W.2d at 194.

It was inappropriate for the trial court to resolve this issue on summary judgment. The facts surrounding Anderson and Veit's discussion of the meaning of the purchase agreement remain in dispute. Veit alleges that he did not understand the purchase agreement, and that he relied on Anderson's representation that the agreement would not be binding if he was unable to clear title to his property. Anderson denies making that statement, and claims that he explained all of the details of the purchase agreement to Veit before he signed it, and that Veit understood that the contract was legally binding. These dis-

puted issues of material fact need to be resolved before judgment is granted.

In addition, the trial court apparently has not considered other factual questions which relate to the reasonableness of Veit's reliance on Anderson's alleged representations. In particular, the trial court has not considered the relative knowledge and sophistication of Anderson and Veit. This factor is critical in determining whether Veit could reasonably rely on Anderson's representations. *See Berg v. Xerxes–Southdale Office Building Co.,* 290 N.W. 2d 612, 616 (Minn.1980) (question to be asked in determining whether reliance is reasonable is "not whether the representation would deceive the average man" but whether the representation was calculated to deceive "a person of the capacity and experience of the particular individual"); *Lewis v. Citizens Agency of Madelia, Inc.,* 306 Minn. 194, 199, 235 N.W.2d 831, 835 (1975) (person with "no special competence or expertise in insurance matters" was justified in relying on insurance agent's interpretation of terms of policy). It is not clear from the record whether Veit is a person with "no special competence or expertise" in real estate who would be justified in relying on an attorney's representations about the legal effect of a purchase agreement, or whether Veit is so sophisticated in real estate matters that he should know better than to believe that the purchase agreement was not absolutely binding, even though a lawyer told him so.

Anderson relies heavily on *Boyd v. De-Gardner Realty and Construction,* 390 N.W.2d 902 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Sept. 24, 1986), in support of his argument that the summary judgment should be affirmed. However, *Boyd* does not support the proposition that the reliance issue was properly resolved as a matter of law on summary judgment. In *Boyd* (as in *Johnson Building Co.* and *General Corp.*) the issue of reliance was treated and resolved as an issue of fact. *Id.* at 904–05. None of these cases supports Anderson's argument that it was proper for the trial court in this case to resolve the reliance issue as a matter of

law. The summary judgment on the fraud claim is therefore reversed.

## DECISION

The summary judgment is reversed, and the case is remanded.

Reversed and remanded.