**Delvin SCHULER, et al., Respondents,**

v.

**Herbert MESCHKE, et al., Appellants.**

**No. C2-88-986.**

Court of Appeals of Minnesota.

Feb. 7, 1989.
Review Denied April 19, 1989.

Gerald J. Seibel, Fluegel, Anderson, Dalager, Dalager & Seibel, Morris, Steven W. Sanford, Cadwell, Sanford & Deibert, Sioux Falls, S.D., for respondents.

R.B. McLarnan, Timothy J. McLarnan, Gjevre, McLarnan, Hannaher, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, for appellants.

Heard, considered, and decided by HUSPENI, P.J., and KALITOWSKI and BOWEN,* JJ.

## OPINION

KALITOWSKI, Judge.

Appellants challenge the trial court's denial of their motion to dismiss for lack of personal jurisdiction and for failure to state a claim for which relief can be granted. The trial court certified both questions as important and doubtful. We affirm in part and reverse in part.

* Acting as judge of the Court of Appeals by ap-

## FACTS

Respondents are a class of farmers who were members of American Energy, Inc. (AEI), a North Dakota cooperative. The farmers signed grower agreements to produce grain for AEI. The farmers come from North Dakota, South Dakota and Minnesota. Appellant Pringle and Herigstad is a law firm with its offices in Minot, North Dakota. It has no offices in Minnesota and its attorneys are not licensed to practice law in Minnesota. Appellant Herbert Meschke, a member of the Pringle & Herigstad law firm, provided legal services for AEI.

AEI had approximately 1,100 members; respondents comprised the majority of AEI members. AEI was headquartered in North Dakota and organized with the intention of building and operating an alcohol production plant in North Dakota. It became necessary for AEI to obtain a preconstruction loan so it borrowed two and a half million dollars from Beneficial Finance Company. Beneficial required AEI to obtain from its members binding written commitments for annual deliveries of grain to the facility for processing. Beneficial also required AEI to purchase contract repudiation insurance, which it did from Industrial Indemnity.

AEI hired Meschke to prepare a written offering circular to be used to solicit grower agreements from farmers and other AEI members. As required by law, the offering circular was filed with state securities agencies in South Dakota, North Dakota and Minnesota. Meschke hired lawyers in South Dakota and Minnesota to give their opinions concerning certain securities law requirements in those states. The grower agreements were delivered to farmers in their own states, including Minnesota.

The project failed. The plant was never built and AEI filed Chapter 7 bankruptcy in North Dakota. AEI defaulted on the preconstruction loan and Beneficial required Industrial Indemnity to abide by the contract repudiation insurance policy. In re-

pointment pursuant to Minn. Const. art. VI, § 2.

turn for payment, Industrial Indemnity took an assignment of the grower agreements from Beneficial and commenced lawsuits in North Dakota Federal Court against all the farmers who had signed the agreements. The federal court upheld the validity of the agreements and ruled Industrial Indemnity could enforce the grower agreements even though no plant was built.

Respondents commenced an action claiming appellant Meschke made negligent misrepresentations or omissions in the offering circular, growers grain supply agreement and related documents. Respondents also claim Meschke breached alleged duties he had to respondents, and induced AEI to breach an alleged contract it had with respondents. Respondents seek indemnity from appellants for attorney fees and settlement payments in the lawsuits commenced by Industrial Indemnity.

The trial court denied appellants' motions to dismiss for lack of personal jurisdiction and for failure to state a claim for which relief can be granted.

## ISSUES

1. Did the trial court err in finding personal jurisdiction over appellants?

2. Did the trial court err when it found that respondents' complaint states a cause action?

## ANALYSIS

I. *Personal Jurisdiction.*

This court may assert personal jurisdiction over appellants only if respondents show appellants are subject to the applicable Minnesota long-arm statute, Minn.Stat. § 543.19 (1986) and that assertion of jurisdiction is consistent with the due process, or minimum contacts requirement of the United States Constitution. *See Sherburne County Social Serv. o.b.o. Pouliot v. Kennedy,* 426 N.W.2d 866, 867 (Minn. 1988). This issue requires a two-step analysis; the constitutional analysis is not reached unless respondents first establish that the state long-arm criteria have been met. *Id.*

The Minnesota long-arm statute, Minn. Stat. § 543.19, was drafted in an effort to extend jurisdiction to the permissible limits allowed by constitutional due process. *Vikse v. Flaby,* 316 N.W.2d 276, 281 (Minn. 1982). Under the relevant provisions of the long-arm statute a court may exercise personal jurisdiction over any foreign corporation or nonresident individual who:

commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) *the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice;* or

(3) the cause of action lies in defamation or privacy.

Minn.Stat. § 543.19, subd. 1(d) (emphasis added).

The second exception represents a codification of the "minimum contacts" test. The question becomes: would the exercise of personal jurisdiction over the nonresident defendant offend due process. The United States Supreme Court has delineated the applicable constitutional standard of fundamental fairness as follows:

[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). The critical focus in any jurisdictional analysis is "the relationship among the defendant, the forum and the litigation." *West American Insurance Co. v. Westin, Inc.,* 337 N.W.2d 676, 679 (Minn.1983) (quoting *Rush v. Savchuk,* 444 U.S. 320, 327, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980)). This relationship is defined by the defendant's contacts with

the forum state, not with its residents. *West American,* 337 N.W.2d at 679.

To determine whether minimum contacts exist between a nonresident defendant and the state, this court examines five factors: (1) the quantity of contacts with the state, (2) the nature and quality of those contacts, (3) the connection or relationship between the contacts and the cause of action, (4) the state's interest in providing a forum, and (5) the relative convenience of the parties. *Marquette Nat'l. Bank of Minnesota v. Norris,* 270 N.W.2d 290, 295 (Minn.1978). Factors (4) and (5) are considered secondary. *Id.* In regard to the fourth factor, Minnesota's interest in providing a forum for its residents is not a "contact" and cannot establish personal jurisdiction. *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.,* 332 N.W.2d 904, 908 (Minn. 1983). The fifth factor, convenience, "is irrelevant unless the defendant also has, as a threshold matter, sufficient contacts with the forum state." *West American,* 337 N.W.2d at 680.

We agree with the trial court that appellant Meschke's minimum contacts with Minnesota are sufficient to confer jurisdiction under Minn.Stat. § 543.19 and the due process clause of the United States Constitution.

1. Quantity of contacts.

Meschke's contacts with Minnesota include numerous phone calls to Minnesota, many of which specifically dealt with the grower agreements, the offering circular, the preconstruction loan and the contract repudiation insurance. Meschke also sent numerous letters to individuals in Minnesota and attended meetings in Minnesota on at least four occasions. At least one of these meetings dealt with the enforceability of the grower agreements. Meschke hired four separate law firms in Minnesota to assist with work for AEI and its members.

2. Quality and nature of contacts.

In reviewing the nature and quality of the contacts, we determine whether the nonresidents " 'purposefully availed' themselves of the benefits and protections of Minnesota law" or whether they were "brought into contact incidentally through the unilateral activity of the plaintiff." *Dent–Air,* 332 N.W.2d at 907. Respondents assert that Meschke knew the grower agreements and offering circular would be circulated to members and prospective members of AEI in Minnesota and that residents of Minnesota would rely on statements contained in these documents, thus purposely availing himself of the privilege of conducting activities within Minnesota.

In *Hunt v. Nevada State Bank,* 285 Minn. 77, 172 N.W.2d 292 (1969), *cert. denied,* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed. 2d 423 (1970), the supreme court indicated that where a defendant seeks to rely on Minnesota contract law to uphold the terms of agreements it enters into with state residents, due process is not offended by requiring that defendant to appear in Minnesota and defend actions arising out of those agreements. Here, as in *Hunt,* Meschke availed himself of the privilege of conducting activities within Minnesota, thus invoking the benefit and protection of the State of Minnesota.

3. Connection between the claim and the contacts.

The defendants' connection with the forum state must be such that they reasonably could anticipate being haled into court in the forum state. An important factor is whether the contacts involved in the case gave rise to the claim. *Dent–Air,* 332 N.W.2d at 908.

Meschke contends that his contacts in the course of his representation of AEI, do not become personal contacts for jurisdiction purposes. We disagree.

In *Edmonton World Hockey Enterprises v. Abrahams,* 658 F.Supp. 604 (D.Minn. 1987), a California attorney was sued in Minnesota for his alleged breach of a settlement agreement between plaintiffs and clients of the attorney in a previous action. The attorney argued that he had not transacted business in Minnesota within the meaning of the Minnesota long-arm statute

because he was acting on behalf of another as an agent. The *Abrahams* court rejected this argument concluding that the settlement agreement contained a representation made by the lawyer in his individual capacity rather than as an agent for a principal. The court stated:

> In addition, where an agent commits a tort, he is individually liable and the contact may be considered in finding personal jurisdiction over him. *Washington Scientific Industries, Inc. v. American Safeguard Corp.*, 308 F.Supp. 736, 739 (D.Minn.1970). Here, plaintiffs allege that defendant committed the tort of knowing misrepresentation. Defendant's contacts with Minnesota related to the alleged tort are sufficient for the assertion of jurisdiction over him.

*Id.* at 608.

The contacts demonstrated here have their basis in Meschke's alleged torts thus negating an agency/principal distinction in regards to personal jurisdiction.

### 4. Minnesota's interest in providing a forum.

Minnesota has an interest in providing a forum for residents who have been wronged, but this interest is not a contact and cannot establish personal jurisdiction. *Dent-Air*, 332 N.W.2d at 908. Here there is support for finding Minnesota's interest in providing a forum to redress alleged injuries of its citizens.

### 5. Convenience of the parties.

In analyzing this factor, we balance the interests of the plaintiff in trying the case in a particular forum against the inconvenience to the nonresident defendant for having to defend in the plaintiff's forum. *Anderson v. Luitjens*, 311 Minn. 203, 210, 247 N.W.2d 913, 917 (1976). Unless the inconvenience to either party is extensive, this consideration is not dispositive. *Aftanase v. Economic Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965).

Since in this case the inconvenience is not extensive and sufficient contacts have been established, the relative convenience of one forum over another is not dispositive and will not be considered.

In applying the five-factor test for determining minimal contacts, we agree with the trial court that the assertion of personal jurisdiction over appellants does not violate traditional notions of fair play and substantial justice.

### II. *Does the complaint state a cause of action?*

Motions to dismiss under rule 12.02 for failure to state a claim upon which relief can be granted test only the sufficiency of the pleadings. D. Herr & R. Haydock, 1 *Minnesota Practice* § 12.9, at 260–61 (1985). On such motions, a court may not go outside the pleadings, and all assumptions made and inferences drawn must favor the party against whom dismissal is sought. *Northern States Power Co. v. Franklin*, 265 Minn. 391, 122 N.W.2d 26 (1963). In reviewing cases involving the question of dismissal for failure to state a claim upon which relief can be granted, the only question before the appellate court is whether the complaint sets forth legally sufficient claims for relief. *Elzie v. Commissioner of Public Safety*, 298 N.W.2d 29 (Minn.1980).

A critical element in determining whether respondents' complaint sets forth legally sufficient claims for relief is whether appellants and respondents had an attorney-client relationship. In *Viet v. Anderson*, 428 N.W.2d 429 (Minn.Ct.App.1988), this court addressed the issue of when an attorney-client relationship exists:

> Minnesota courts have recognized both a "contract theory" and a "tort theory" of the attorney-client relationship. An attorney-client relationship exists under the "contract theory" if the parties explicitly or implicitly agree that the attorney will provide legal services to the client. (Citations omitted.)
>
> An attorney-client relationship exists under the "tort theory" even in the absence of an express contract "whenever a person seeks and receives legal advice from a lawyer under circumstances in which a

reasonable person would rely on the advice." (Citations omitted.)

"[I]t must * * * be shown that [the attorney] rendered legal advice (not necessarily at someone's request) under circumstances which made it reasonably foreseeable to the attorney that if such advice was rendered negligently, the individual receiving the advice might be injured thereby." (Citation omitted.)

*Viet*, 428 N.W.2d at 431–32.

Respondents allege that because of the appearance of inseparability between AEI and its members and the direct communication from Meschke, the activities performed by Meschke were being performed for them as members of the cooperative. We do not find this argument persuasive.

An incorporated cooperative is a legal entity, separate and apart from its members. 18 Am.Jur.2d *Cooperative Associations*, § 3, page 263. North Dakota law governing cooperatives recognizes a distinction between a cooperative and its members. North Dakota Century Code § 10–15–31, subd. 1 (1986) states that directors, trustees, officers and managers are immune from civil liability unless the act or omission constitutes gross or willful negligence or gross or willful misconduct. Subdivision 2 states that members, stockholders and patrons of a cooperative are not obligated to pay, and are not liable for, any cooperative obligation. Minnesota has similar laws. *See* Minn.Stat. §§ 308.05–.18 (1986).

In the present case Meschke was hired by the cooperative. Correspondence from Meschke, included in respondents' complaint, was always addressed to AEI and not to individual farmers. We do not find the language in the correspondence was meant to establish an inseparable entity. The letters relied on by respondents were only an attempt to explain the various documents that potential members would execute to join the cooperative. Thus the correspondence did not establish a contractual relationship between Meschke and respondents.

Moreover, it is clear from the pleadings that under the "tort theory" no attorney-client relationship existed. The requirement under this theory is that an attorney must have provided legal advice or service, and the plaintiff must demonstrate that the information was such that under similar circumstances a reasonable person would have relied on the information. *See Viet*, 428 N.W.2d at 432.

In *Viet*, the appellant alleged that he sought and received inaccurate legal advice from his attorney whom he had consulted in the past. In the present case respondents did not seek advice and Meschke had never represented any of the respondents. Moreover, the information supplied by Meschke would not be the type of information that would establish an attorney-client relationship even if relied upon. The information was strictly informative.

The respondents' complaint asserts five causes of action: (1) negligent misrepresentation; (2) constructive fraud (intentional or reckless); (3) breach of fiduciary duty; (4) wrongful interference with contract; and (5) common law indemnity.

1. Negligent misrepresentation.

Respondents first cause of action alleges negligence on the part of the appellant Meschke in making false, inaccurate, incomplete and/or misleading representations to respondents and negligently omitting disclosure of certain facts.

Minnesota courts have not extended the theory of negligent misrepresentation to claims by non-clients against an attorney. This approach was expressly rejected by this court in *Eustis v. David Agency, Inc.*, 417 N.W.2d 295 (Minn.Ct.App.1987). In *Eustis*, this court stated:

The trial court applied the well-established rule that an attorney will not be liable to a non-client third party for negligence. Liability arises only if that attorney acted with fraud, malice, or has otherwise committed an intentional tort.

*Eustis*, 417 N.W.2d at 298 (citing *Farmer v. Crosby*, 43 Minn. 459, 461, 45 N.W. 866 (1890)). Here the respondents concede

there is no evidence of intentional fraud. Thus, this cause of action must fail.

2. Intentional or reckless fraud.

 The respondents ask this court to both recognize a new cause of action—reckless misrepresentation—and hold that it is equivalent to intentional fraud.

As support for this theory respondents rely on *Florenzano v. Olson*, 387 N.W.2d 168 (Minn.1986). Respondents' reliance on *Florenzano* and the discussion concerning reckless misrepresentation is misplaced. The majority opinion in *Florenzano* does not expressly recognize a separate cause of action for reckless misrepresentation. However a concurring opinion describes three types of actionable frauds, one of which is termed reckless misrepresentation. Reckless misrepresentation is defined as "when the representer asserts a fact as of his own knowledge without knowing whether it is true or false." *Id.* at 177 footnote 2. However, the opinion states that reckless misrepresentation is not an intentional tort and that comparative fault would apply in a case alleging reckless misrepresentation but not in a case alleging intentional misrepresentation. *Id.* at 178. Thus, even if reckless misrepresentation was recognized as a separate tort, it is clear it is not an intentional tort, as required by *Eustis* for a third party to sue an attorney. Therefore, respondents' complaint alleging reckless misrepresentation does not state a cause of action for which relief can be granted.

3. Breach of fiduciary duty.

 Respondents' third cause of action alleges that Meschke was in a fiduciary capacity with regard to the farmers and breached that duty. In *Midland National Bank of Minneapolis v. Perranoski*, 299 N.W.2d 404 (Minn.1980), the court held "a fiduciary relation exists when confidence is reposed on one side and there is resulting superiority on the other." *Id.* at 413 (citing *Kennedy v. Flo–Tronics, Inc.*, 274 Minn. 327, 331, 143 N.W.2d 827, 830 (Minn.1966)).

The allegation that Meschke had a fiduciary duty to respondents is contrary to the rule in Minnesota that an attorney acting within the scope of his employment is immune from liability to third parties.

In *Marker v. Greenberg*, 313 N.W.2d 4 (Minn.1981), the supreme court stated the general rule that an attorney is liable only to one with whom he has an attorney-client relationship.

The cases extending the attorney's duty to non-clients are limited to a narrow range of factual situations in which the client's sole purpose in retaining an attorney is to benefit directly some third party.

*Id.* at 5. Privity of contract or an attorney-client relationship is a requirement to an action against an attorney by a third party. It is not enough that respondents might have been intended beneficiaries of the work done by Meschke. *See Langeland v. Farmers State Bank of Trimont*, 319 N.W.2d 26 (Minn.1982). (A party even though an intended beneficiary does not negate the application of the rule that an attorney is immune from suit by a third party action resulting from the relationship between the attorney and his client.)

4. Wrongful inducement of breach of contract.

 For their fourth cause of action, respondents allege Meschke wrongfully and without justification caused or induced AEI to breach its contract with respondents, and respondents suffered resulting damage.

There are five elements to this tort: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. *Furlev Sales v. North American Automotive*, 325 N.W.2d 20, 25 (Minn.1982) (citing *Stephenson v. Plastics Corp. of America*, 276 Minn. 400, 416, 150 N.W.2d 668, 679 (1967)).

An examination of the pleadings leads us to the conclusion that the complaint does not set forth sufficient allegations that Meschke intentionally procured the breach of the contract without justification.

The general rule is that officers of a corporation are shielded from personal liability for interference with contracts if they merely cause the corporation not to perform the contract. *Furlev,* 325 N.W.2d at 26. In *Furlev* the court found an attorney for a corporation who was acting outside the scope of his authority does not have this same immunity from liability. However, here there is no showing that Meschke acted outside the scope of his authority in his representation of AEI.

Accordingly, we hold that respondents' complaint regarding this cause of action fails to state a claim for which relief can be granted.

5. Common law indemnity.

 Respondents' complaint alleges that they were exposed to the liability of Industrial Indemnity on the grower agreements "solely because of appellants' wrongful acts and omissions in concealing from Beneficial and Industrial Indemnity the circumstances under which the grower agreements were obtained."

In *Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 104 N.W.2d 843 (1960), the supreme court explained the nature of the remedy of indemnity. While traditionally indemnity has been viewed as a right arising out of contract, the award of indemnity should follow traditional concepts of equity. *Sorenson v. Safety Flate, Inc.,* 298 Minn. 353, 216 N.W.2d 859 (1974).

However, the law implies a promise of indemnity from a principal to his agent for any damages resulting from the acts of the agent in the good faith execution of that agency. *Hill v. Okay Construction Company, Inc.,* 312 Minn. 324, 252 N.W.2d 107, 120 (1977) (emphasis added). Here the principal is AEI not respondents and for that reason alone respondents complaint fails to state a cause of action for common law indemnity. In addition, the complaint fails to establish any equitable basis for allowing a claim for common law indemnity.

## DECISION

We affirm the trial court's finding that minimum contacts exist between the nonresident defendant and the State of Minnesota sufficient to sustain the state's exercise of personal jurisdiction over the defendant. However, we hold respondents' complaint fails to state a claim for which relief can be granted and therefore the complaint is dismissed.

AFFIRMED IN PART AND REVERSED IN PART.