**NATIONAL CITY BANK OF MINNEAPOLIS, Respondent,**

v.

**CERESOTA MILL LIMITED PARTNERSHIP, et al., Respondents,**

**The City of Minneapolis, et al., Respondents,**

**Howard B. Bergerud, et al., Respondents,**

**Gregory J. Hayes, et al., Respondents,**

**Robert C. Whitney, et al., Defendants,**

**the Estate of Thomas M. Whitney, et al., Respondents,**

**Muriel Jayne Hayes, Respondent,**

**and**

**Donna J. WHITNEY, individually and in her capacity as Co–Trustee of and on Behalf of the Whitney Revocable Trust, The Whitney Family Trust and the Whitney Tax Deferral Trust, and in her capacity as Executrix of and on Behalf of the Estate of Thomas Whitney, Third–Party Plaintiff, Respondent,**

v.

**David W. MITCHELL, et al., Third–Party Defendants, Respondents,**

**Hopkins & Carley, Third–Party Defendant, Appellant,**

**Roger D. Gordon, et al., Third–Party Defendants, Respondents.**

No. C6–91–659.

Court of Appeals of Minnesota.

Nov. 5, 1991.

Review Granted Dec. 31, 1991.

Larry M. Wertheim, Mary G. Dobbins, Holmes & Graven, Minneapolis, for National City Bank of Minneapolis.

William Kampf, Ann Ladd, Fredrikson & Byron, P.A., Steven D. DeRuyter, Leonard, Street & Deinard, Paul H. Ravich, Ravich, Meyer & Kirkman, Minneapolis, for Ceresota Mill Ltd. Partnership, et al.

Robert V. Alfton, Minneapolis City Atty., Jerome F. Fitzgerald, Asst. City Atty., Minneapolis, for The City of Minneapolis, et al.

Louis W. Brenner, Brenner Law Firm, Bloomington, for Howard B. Bergerud, et al.

Joel A. Seltz, Mirviss, Seltz & Seltz, Minneapolis, for Gregory J. Hayes, et al.

William S. Rosen, David D. Meyer, Rosen, Meyer & Simons, St. Paul, for the Estate of Thomas M. Whitney, et al.

Gregory J. Collins, Mulligan & Bjornes, Minneapolis, for Muriel Jayne Hayes.

Craig W. Gagnon, Oppenheimer, Wolff & Donnelly, Minneapolis, for David W. Mitchell, et al.

David L. Hashmall, Fred L. Morrison, J. Michael Schwartz, John M. Baker, Popham,

Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Hopkins & Carley.

Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, Minneapolis, for Roger D. Gordon, et al.

Considered and decided by DAVIES, P.J., and PARKER, and THOREEN,* JJ.

## OPINION

DAVIES, Judge.

The trial court held that as to this litigation Minnesota has personal jurisdiction over appellant law firm Hopkins & Carley of California. We affirm.

## FACTS

Appellant Hopkins & Carley is a California law firm of approximately 35 members, whose former partner, David Mitchell, represented Tom and Donna Whitney in California as their family attorney. His representation was primarily in regard to estate planning and the formation of entities to carry on their business interests and to protect the family estate.

When the Whitneys and the Whitney trust were to become major investors in a Minneapolis real estate project (the Whitney Hotel) in 1985, the Whitneys were asked by their Minnesota counsel to provide opinion letters regarding the validity of the execution and delivery of the Whitney guaranties on project bonds. Hopkins & Carley provided those opinion letters. Later, the firm offered advice on how Tom Whitney's death might affect the ability of the trust to fulfill its obligations on the projects.

Tom Whitney died in November 1986. By that time the real estate project was experiencing financial problems. By January 1987, respondent Donna Whitney (Whitney) had asked Mitchell to help her assess what was transpiring in Minnesota and, at her request, Mitchell began making approximately monthly trips to Minnesota with Whitney, sitting in on day-long meetings regarding the Minnesota project and, especially, its financial problems. There were four such trips while Mitchell was a partner in Hopkins & Carley.

The guaranties by the Whitneys, claimed against in the underlying action here, totalled more than $20,000,000. A provision in the guaranties might have allowed release of the Whitney guaranties as a result of Tom Whitney's death. A third-party malpractice action, asserted against appellant and others, alleges that Donna Whitney was not advised of the release provision and, instead of escaping the guaranty, was led to make additional investments in the project.

There are allegations that Mitchell, in Minnesota, passed on erroneous information from the Minnesota lawyer who drafted the guaranties, to the effect that Whitney could not get out of the guaranties. The heart of the malpractice allegation against Hopkins & Carley and Mitchell is, however, that Mitchell failed over a period of time to tell Whitney of the potential means by which the Whitney interests could be extricated from the guaranties. Thus, rather than an affirmative act, which might be placed more easily either inside or outside Minnesota, we have the absence of action over time.

In May 1987, Mitchell left Hopkins & Carley and became a partner in another California law firm; he continued his representation of Whitney, including many activities in relation to the Minnesota real estate project. Mitchell and his new law firm concede personal jurisdiction over them in Minnesota regarding activities while he was a member of that new firm, but appellant Hopkins & Carley challenges the trial court's decision that Minnesota has personal jurisdiction over it for this action.

## ISSUE

Does Minnesota have personal jurisdiction over Hopkins & Carley in the third-party malpractice action?

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

pursuant to Minn. Const. art. VI, § 2.

## ANALYSIS

In making our decision, we have disregarded those portions of respondent's appendix that were not a part of the trial court file, as such documents do not constitute a part of the record on appeal under Minn.R.Civ.Ap.P. 110.01.

■ An order denying a motion to dismiss for lack of jurisdiction is appealable. *In re State and Regents Bldg. Asbestos Cases*, 435 N.W.2d 521, 522 (Minn.1989). In evaluating a pretrial challenge to personal jurisdiction, the plaintiff has the burden of making a prima facie case for jurisdiction. *S.B. Schmidt Paper Co. v. A to Z Paper Co.*, 452 N.W.2d 485, 487 (Minn.App. 1990). In reviewing whether plaintiff met its burden, "plaintiff's allegations and supporting evidence must be taken as true." *Id.*

■ A state may assert personal jurisdiction over a nonresident if the nonresident is subject to the applicable long-arm statute and assertion of jurisdiction meets the requirements of due process, or minimum contacts, under the U.S. Constitution. *Schuler v. Meschke*, 435 N.W.2d 156, 159 (Minn.App.1989).

We find it convenient to discuss the due process issue before analyzing how the long-arm statute fits this situation.

### I.

The modern law of jurisdiction began with *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted), which held:

> [D]ue process requires only that * * * [a defendant] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

As explained in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958):

> [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws.

■ To evaluate a person's relationship to Minnesota, the Minnesota Supreme Court has adopted the five-factor test of *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965).

> An analysis of minimum contacts requires consideration of (1) the quantity of contacts, (2) the nature and quality of contacts, (3) the source and connection of those contacts to the cause of action, (4) the interest of the forum state, and (5) the convenience of the parties. The first three factors are the primary factors, with the last two deserving lesser consideration.

*Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 (Minn. 1983).

We discuss these five factors in order.

1. *Quantity of contacts.* Time sheets of Hopkins & Carley filed in this action cover a period starting in November 1986, the month in which Tom Whitney died. His death triggered a potential right of Donna Whitney to be released from the guaranties and started the period of the alleged malpractice chargeable to Hopkins & Carley, which ran through April 1987 when Mitchell left the firm. The time sheets show extensive contacts with Minnesota by mail and telephone, plus four trips to Minnesota for day-long meetings, all in relation to the Minnesota project giving rise to the malpractice claim. The quantity of these contacts with Minnesota may be sufficient to justify jurisdiction over Hopkins & Carley in Minnesota for this case, but we believe the next two factors are more compelling.

2. *Nature and quality of contacts.* The key issue is whether, by its contacts, Hopkins & Carley "purposefully avail[ed] itself of the privilege of conducting activities within [Minnesota], thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240.

There were layers of corporate, partnership, trust, and municipal interests involved

in the Whitney business relationships in Minnesota, each interest relying on Minnesota law regarding its business, financial, and legal transactions. The involvement of Hopkins & Carley with these Minnesota business and legal relationships was both extensive and intimate. Mitchell and his former firm, appellant here, were intimately involved in the analysis of and decision-making regarding this multitude of legal, business, and financial relationships. Others provided the initial legal structure for the Minnesota project, but Hopkins & Carley provided the day-to-day business and legal advice regarding the Whitney role in the operation of the Minnesota project. In doing this, Hopkins & Carley was conducting its own business, that of legal and business advisors.

It thus availed itself of this opportunity provided by the Minnesota community to earn and collect professional fees. It appears that Hopkins & Carley was involved profitably in this Minnesota project. This means that, we believe, it "purposefully avail[ed] itself of the privilege of conducting activities within [Minnesota], thus invoking the benefits and protections of its laws," so as to meet the test of *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1240.

We distinguish the situation in *Schuck v. Champs Food Systems*, 424 N.W.2d 567 (Minn.App.1988). In *Schuck*, a Canadian architect provided a prototype plan for a chain of restaurants, the first of which, somewhat by chance, was built in Minnesota. *Schuck*, 424 N.W.2d at 570. The Canadian architect took no part, however, in the decision-making process regarding opening the restaurant in Minnesota, and did not participate in the construction review process here. *Id.* In this case, in contrast, it was a Minnesota project start to finish.

3. *Connection between contacts and cause of action.* Hopkins & Carley argues that the claim does not arise out of its contacts with Minnesota in any literal sense. Hopkins & Carley's contacts with this action, however, all relate directly or indirectly to the Minnesota project for which Whitney had guaranteed bonds. These guaranties, from which she wished to be released, give rise to the malpractice claim.

As the U.S. Supreme Court noted:

[W]hen a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising "specific jurisdiction" over the defendant.

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). Thus, the issue in this case is not whether this state has general jurisdiction over appellant, but whether it has specific jurisdiction for this case alone.

The "general" home of the lawyer/client relationship between Whitney and Hopkins & Carley may be California, but the "specific" home of that relationship is Minnesota as it involves this particular piece of business. Legal business that Hopkins & Carley did for Whitney elsewhere, no matter how substantial, does not siphon away the Minnesota contacts to this specific case.

Furthermore, if the allegedly defective product of Hopkins & Carley had been engineering or architectural services, rather than legal advice, jurisdiction easily would be found. In truth, the legal services of Hopkins & Carley, which are questioned here, were as essential to the creation of this Minnesota hotel—and as precisely aimed at this one project and no other—as construction and engineering services would have been.

In *Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872, the U.S. Supreme Court uses the terms "arise out of or relate to" to identify the activities necessary for a forum state to have specific jurisdiction over a foreign corporation. *Id.* at 415 n. 10, 104 S.Ct. at 1872 n. 10. We hold that the alleged misconduct here both arose out of and was related to the transactions in Minnesota.

4. *Interest of the forum state.* This is one of two secondary factors, but in *Mid–Continent Freight Lines v. Highway Trailer Indus.*, 291 Minn. 251, 257, 190 N.W.2d 670, 674 (1971), the Minnesota Supreme Court said the state may have "a

constitutionally appropriate interest in providing a forum to a nonresident plaintiff." Further, in a footnote, the court said Minnesota has given a broad construction to the residency requirement. *Id.* at n. 4. Thus, a company incorporated in another state, but having its principal place of business in Minnesota, might be considered a resident based on the extent of contacts with the state. *Hunt v. Nevada State Bank*, 285 Minn. 77, 104 n. 28, 172 N.W.2d 292, 308 n. 28 (1969), *cert. denied* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970). The logic of extending jurisdiction on behalf of a foreign corporation also applies when a nonresident individual or trust has as extensive a commercial interest as Whitney now has in Minnesota.

5. *Convenience of the parties.* Another secondary factor is convenience of the parties and "[u]nless the inconvenience to either party is extensive, this consideration also is not dispositive." *Schuck*, 424 N.W.2d at 571.

Inconvenience usually is raised as a reason for rejecting jurisdiction. The argument is not compelling, however, because the motion to change forums for forum non conveniens remains in the background as a more precise remedy. For example, in *Sher v. Johnson*, 911 F.2d 1357, 1365 n. 5 (9th Cir.1990), the court noted that:

[A]ny disputes about the inconvenience of a California trial are more appropriately resolved through a motion for change of venue, rather than through dismissal for lack of jurisdiction.

Convenience weighs in here, however, as an affirmative factor, supporting jurisdiction in Minnesota. The relationships and transactions at issue in the underlying suit are complex and involve a great many parties, most of them Minnesota based. In this complex set of lawsuits, the convenience of almost all other parties weighs in favor of finding Minnesota jurisdiction over Hopkins & Carley.

That a Minnesota forum would be more convenient for other parties also may be evidence of the extent to which Mitchell and Hopkins & Carley were availing themselves of the opportunities offered by the Minnesota community when they provided legal services necessary for the development of the Whitney Hotel.

Having considered the five *Aftanase* factors, we hold the requirements of due process are satisfied.

## II.

We turn now to an examination of whether the Minnesota long-arm statute is satisfied here.

The Minnesota long-arm statute, Minn. Stat. § 543.19 (1986), provides for personal jurisdiction over a nonresident who

(b) Transacts any business within the state, or

(c) Commits any act in Minnesota causing injury or property damage, or

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice * * *.

As to paragraph (b), Hopkins & Carley, through its partner Mitchell, practiced law "in Minnesota" when the advice related to a Minnesota project and involved calls, letters, and trips to Minnesota. It would be improper to permit lawyers so involved in Minnesota to isolate themselves from the reach of Minnesota courts because they did not solicit additional legal business in Minnesota.

As to paragraph (c), appellant is alleged to have committed more than one "act" in Minnesota causing property damage to Whitney. Mitchell made four trips to Minnesota for day-long conferences regarding the problems encountered by the Minnesota project and how to solve them. While Hopkins & Carley argues that these trips were investigatory in nature, Whitney says they were intended to assist Mitchell in telling her "what I was supposed to do" and that "we were always exploring how to

get me out" of the project. Further, Whitney testified that the question of whether she could get out of the guaranties came up at these Minnesota meetings. Whitney also testified that Mitchell told her—in Minnesota—that the Minnesota lawyer had said there was no way out, except for the hotel bond.

Further, appellant's time sheets from November 1986 through April of 1987 show extensive interaction by means of telephone calls and mail between members of Hopkins & Carley in California and individuals in Minnesota regarding the Minnesota project.

Plaintiff has the burden of making a prima facie case for jurisdiction, but plaintiff's allegations and evidence must be taken as true. *Schmidt Paper*, 452 N.W.2d at 487. Certainly the above actions—or absence of action—might be determined to have been "committed" in Minnesota, thus satisfying paragraph (c).

We turn now to paragraph (d), which confers jurisdiction if acts outside of Minnesota cause property damage in Minnesota. The above acts, wherever done, could be judged to have caused damage in Minnesota. Paragraph (d) only confers jurisdiction if its exceptions do not apply, i.e., when there is a Minnesota interest and the requirements of due process are met. Thus, the requirements for due process, as set out in federal and state law, are of primary importance to a finding of jurisdiction. We have held that due process is not violated in this case and we now hold that jurisdiction over Hopkins & Carley is proper under the Minnesota long-arm statute. Minn.Stat. § 543.19, subd. 1.

## DECISION

The Hopkins & Carley law firm rendered extensive business and legal advice on a Minnesota transaction, and some of that advice was rendered in Minnesota; the trial court did not err in holding that Minnesota has personal jurisdiction over that law firm in this case.

Affirmed.

PARKER, Judge (dissenting).

I respectfully dissent, because I believe the majority's formalistic "five-part" analysis soberly discussing the factors favoring exercise of Minnesota's long-arm statute misses the forest for the trees. The majority opinion describes at length the complexity of the development transaction with which respondent Whitney was involved in Minnesota as though that were the gravamen of the case with which we are concerned. It is not.

This case is a third-party action by a California resident-client against a California law firm for legal malpractice allegedly committed while giving advice on California law as it affected certain documents giving rise to liability in the underlying Minnesota legal dispute. From 1981 to May 1987, Hopkins & Carley (third-party defendant) provided services to the Whitneys in California relating to estate planning, taxation, the creation of certain California trusts, incorporation of Whitney family business interests and California probate matters. Only during the last six months of that period did the law firm of Hopkins & Carley provide legal services that had a bearing upon the Minnesota development. David Mitchell, the specific attorney involved, left the firm at that time, but continued his representation of the Whitney trusts and Donna Whitney. During this period, she retained a prominent Twin Cities firm as Minnesota counsel.

The majority opinion attempts to cloud this issue by formulating a novel distinction. Forced to admit that the "general" home of the legal relationship between attorney and client in this case is California, it makes the statement that Minnesota is the "specific" home of the relationship as it involves this bit of legal business. The record simply does not bear this out, nor is authority provided for the distinction. The Whitneys' documents in this matter were prepared for them in Minnesota by their Minnesota law firm and were sent to Mitchell for his examination and legal opinion on the impact of the California law of trusts as it bore on the transactions. He accom-

panied the client to Minnesota for meetings at which they were represented by their Minnesota law firm. This is a common practice in this day of rapid communications and transportation. To subject out-of-state attorneys to Minnesota jurisdiction for purposes of a malpractice action unwisely interferes with the relationship between attorney and client.

The opinion candidly admits that there is no evidence of any specific act of alleged malpractice committed in Minnesota during the brief period of Hopkins & Carley's representation. It does not carefully limit its description of attorney Mitchell's involvement in Minnesota to this six-month period, and it ignores a factor even more fundamental.

Minnesota has little or no interest in providing a forum for a malpractice action by a California client against a California lawyer. California, on the other hand, has a profound interest in allegations of negligence in the performance of legal duties by an attorney licensed under its laws. It would be quite different had the California lawyer tried a lawsuit in a Minnesota court or represented his client before one of our regulatory agencies. What he did, however, was to give advice on the impact of California law as to trusts and the execution of documents on the validity of loan guarantees executed in Minnesota pursuant to the advice of Minnesota lawyers. In doing so, he traveled to Minnesota and was present at meetings in which she was represented by her Minnesota counsel. This does not constitute "purposeful availment" of the forum state for purposes of a due process analysis.

In *Asahi Metal Ind. Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the United States Supreme Court addressed the question of a third-party action by a Japanese supplier of valves against a Taiwanese tire manufacturer. The underlying wrongful-death action had been settled and a "stream of commerce" theory was advanced to hold the lawsuit in California. The court, in rejecting this application, required that the

"substantial connection" * * * between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.*

*Id.,* at 111, 107 S.Ct. at 1032 (citations omitted; emphasis in original). Only when such a cognizant exposure to possible liability may be said to exist can constitutional due process restraints be satisfied. Only when the actor may reasonably be said to be able to foresee being "haled into" the courts of the forum state can due process be satisfied. The necessity of interstate travel with clients by attorneys licensed by individual states requires that restraint be exercised by courts in the application of a state's long-arm statute to a protection of its residents or upon clear and unequivocal evidence of acts the negligent performance of which would reasonably give rise to the foreseeability of being haled into the courts of another state.

The majority opinion states a pragmatic reason for holding the third-party malpractice action here. The underlying action belongs here, and neither attorney Mitchell nor his subsequent law firm has challenged personal jurisdiction. There was a pragmatic reason for the Taiwanese manufacturer to hold *Asahi* in a California court as well; doubtless the manufacturer preferred litigation against a powerful Japanese corporation in a neutral forum. Neither pragmatic reason comports with the constitutional requirements of due process for the third-party defendant, because it offends "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

I would follow the analysis of the United States Supreme Court upon so basic a constitutional issue and reverse the trial court.